260 So.2d 839 (1972)
Charles DOTSON
v.
STATE of Mississippi.
No. 46781.
Supreme Court of Mississippi.
April 17, 1972.
*840 Robert J. Kelly, Batesville, for appellant.
A.F. Summer, Atty. Gen., by James W. Haddock, Special Asst. Atty. Gen., Jackson, for appellee.
BRADY, Justice:
This is an appeal by Charles Dotson, defendant below, from a conviction in the Circuit Court of Tunica County, Mississippi, of possession of burglary tools pursuant to Mississippi Code 1942 Annotated section 2044 (1957), in which appellant was sentenced to four years in the penitentiary.
David Huggins, a Mississippi Highway Patrolman, was on duty the night of January 13 and the morning of January 14, 1971, when the crime at bar allegedly occurred. Officer Huggins drove his patrol car down to check his mail at the Tunica Post Office at or about 12:05 a.m. on January 14, where he observed the appellant in the post office; he also noticed that some boxes were open. Huggins testified that he thereupon "observed the defendant coming out of the post office walking in a rather sideways manner, appearing to me to be hiding something, and I could notice something in his hands." However, Huggins was unable to identify just what it was in appellant's hands.
As appellant left the post office, Huggins asked him to "hold up a minute." However, appellant began walking very rapidly so Huggins pulled his car over beside appellant and observed that the object or objects in appellant's hand were very large. Huggins thereupon advised appellant to halt, and to hold up whatever he had in his hand. Appellant held them up, and Huggins could see that it was a large bolt and screwdriver. Huggins further advised appellant to drop the objects he was clutching. As appellant released the objects, he quickly dropped his right hand into his pocket. Officer Huggins noticed what appeared to be the imprint of a pistol in appellant's pocket with the handle "tipping" out. At this time Huggins put appellant under arrest and took the pistol off of him.
Upon subsequent examination of the post office, it was discovered that some post office boxes were open and an obvious attempt had been made to pry open a post office door. The molding from the door along with the screwdriver and bolt were taken to the crime lab. The paint on the screwdriver and the paint on the door molding were found to be identical.
Although the facts vary substantially, we find that this case falls squarely within the rationale of the landmark case of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In the past we have often been compelled to rely upon opinions rendered by the United States Supreme Court; in this instance we do so with pleasure. Terry involved a police officer's sidewalk observation of several persons' suspicious behavior which he deduced to be the "casing of a job, a stick-up." (392 U.S. at 6, 88 S.Ct. at 1872, 20 L.Ed.2d at 897). The officer approached the men and asked for their names. When the men replied *841 to his inquiries with mumbles, the officer patted down the outside of their clothing and discovered concealed weapons on several of the men. The seizure of the weapons was challenged at their trial on the ground of being the fruit of an illegal search. In affirming the conviction, the Supreme Court made it clear that a police officer who has observed persons going through a series of acts, each of them perhaps innocent in itself, but which taken together warrant further investigation, may in an appropriate manner approach the persons for purposes of "investigating" possible criminal behavior even though there is no probable cause to make an arrest.[1] In so holding the Court in Terry emphasized the special qualifications of an experienced police officer in detecting crime at its inception.
In his concurring opinion in Sibron v. State of New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d at 917 (1968), Justice Harlan stated that:
While "probable cause" to arrest or search has always depended on the existence of hard evidence that would persuade a "reasonable man," in judging on-the-street encounters it seems to me proper to take into account a police officer's trained instinctive judgment operating on a multitude of small gestures and actions impossible to reconstruct. Thus the statement by an officer that "he looked like a burglar to me" adds little to an affidavit filed with a magistrate in an effort to obtain a warrant. When the question is whether it was reasonable to take limited but forcible steps in a situation requiring immediate action, however, such a statement looms larger. A court is of course entitled to disbelieve the officer (who is subject to cross-examination), but when it believes him and when there are some articulable supporting facts, it is entitled to find action taken under fire to be reasonable. (392 U.S. at 78, 88 S.Ct. at 1910, 20 L.Ed.2d at 943-44.)
The application of the Terry test in determining whether such an encounter is "unreasonable," brings to bear two points of judicial inquiry: First, "whether the officer's [Huggins'] action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." (392 U.S. at 19-20, 88 S.Ct. at 1879, 20 L.Ed.2d at 905.)
In determining whether the first step of this dual inquiry was satisfied, we apply the standard laid down in Terry, supra, to-wit:
[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion... . And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate? (392 U.S. at 21-22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906.)
Additionally, the Court in Terry, supra, referred to the holding of Camara v. Municipal Court, 387 U.S. 523, 534-535, 536-537, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930 (1967) to the effect that there is "no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails." (392 U.S. at 21, 88 S.Ct. at 1879, 20 L.Ed.2d at 905.)
*842 The specific and articulable facts which Officer Huggins was aware of at the time he first requested appellant to "hold up a minute" are the following, to-wit: Huggins observed the young Negro boy (appellant) in casual clothes in the post office at 12:05 a.m., Wednesday, January 14; several mail boxes were open; and as appellant left the post office, he walked in a rather sideways manner, appearing to be hiding something in his hand which Huggins could not identify. When Officer Huggins requested him to hold up a minute, appellant began walking away "real fast." Under these facts we conclude that Officer Huggins had reasonable grounds to suspect that a crime was being committed or was about to be committed, and therefore the original intrusion upon appellant's personal liberty was reasonable as well as relatively harmless.
Officer Huggins' command for appellant to drop the objects in his hand and Huggins' subsequent removal of a pistol from appellant's person which was partially visible clearly satisfies the second step of the dual inquiry. Terry, 392 U.S. 1, 27, 88 S.Ct. 1868, 1870, 20 L.Ed.2d 889, 909, held that a police officer who has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest, may make a reasonable search for weapons (frisk), even though he is not absolutely certain that the individual is armed. However, we expressly do not consider the "frisk" aspect of Terry, supra, for the reason that Officer Huggins readily observed the objects in Dotson's hand and the pistol protruding from his pocket. What a person knowingly exposes to the public is not a proper subject for Fourth Amendment protection. Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); and United States v. Jackson, 448 F.2d 963 (9th Cir., 1971). Hence, all that remained was for Officer Huggins to seize the objects apparent to his eye.
Appellant assigns two additional errors, one being that the trial court erred in admitting the screwdriver into evidence; appellant contends that the state was unable to prove the chain of possession of the screwdriver from the time of the arrest until the time of the trial. Appellant's other assignment of error is that the trial court erred in overruling his objection to Officer Huggins testifying in rebuttal. We find these assignments of errors without merit.
For the aforesaid reasons, this case is affirmed.
Affirmed.
GILLESPIE, C.J., and PATTERSON, SMITH and SUGG, JJ., concur.
NOTES
[1] Such an encounter would still amount to a "seizure" of a person in the Fourth Amendment sense, but the legality of such a seizure would depend upon whether there was a violation of the general proscription against unreasonable searches and seizures, rather than whether there was probable cause to make an arrest. United States v. Jackson, 448 F.2d 963, 969 (9th Cir.1971).