318 So.2d 873 (1975)
Marcus SINGLETARY
v.
STATE of Mississippi.
No. 48543.
Supreme Court of Mississippi.
September 29, 1975.
*874 Moore, Epps & Ginger, Jackson, for appellant.
A.F. Summer, Atty. Gen. by Karen Gilfoy, Asst. Atty. Gen., and Billy L. Gore, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before GILLESPIE, C.J., and SMITH and ROBERTSON, JJ.
GILLESPIE, Chief Justice, for the Court:
Marcus Singletary was convicted of burglary and sentenced by the Circuit Court of the First Judicial District of Bolivar County to serve a term of five years in the Mississippi State Penitentiary.
Singletary was indicted and tried for the burglary of a store in the Town of Benoit, in Bolivar County near Cleveland. The burglary was discovered on Sunday morning, October 1, 1972. On October 2, about noon, the Warren County Sheriff's Department received information from the manager of a Vicksburg motel that three rooms in the motel had been rented under the name of Alonzo Pritchard. Pritchard was one of five persons indicted for the burglary of the Benoit store, the other four being Linda McMillan, Nell McMillan, Julian L. McMillan and Singletary. Pritchard's conviction was previously affirmed by this Court. Pritchard v. State, 295 So.2d 283 (Miss. 1974).
The manager of the motel called Edward H. Reed, Chief Criminal Deputy Sheriff of *875 Warren County, and informed him that a large sum of money was in the room occupied by Julian and Linda McMillan; that there were some people in the room counting money; that there was a gun in the room occupied by Singletary. Upon receipt of this information, Reed called the Jackson office of the Federal Bureau of Investigation and asked them to send some agents to Vicksburg because he thought that the occupants of the three rooms at the motel might be connected with a bank robbery which had occurred in Jackson a few days before.
Reed and another officer placed the motel rooms in question under surveillance at 1:30 p.m. on October 2, and the FBI agents arrived in Vicksburg between three and four o'clock. Deputy Reed learned from the FBI that a recent bank robbery in Mobile and the one in Jackson involved three males and two females. The occupants of the rooms in the motel matched the description of the bank robbers in a general way, and Pritchard and Singletary fitted the description of two of the bank robbers.
While the rooms were under surveillance, Singletary, McMillan and Pritchard arrived at the motel in Singletary's automobile, which bore a Georgia license tag. Singletary and Julian McMillan went to their rooms and Nell McMillan came from her room and got into the car with Pritchard. This was the same car that the five persons occupying the rooms were in when they first arrived at the motel to rent the three rooms. Pritchard and Nell McMillan then left in Singletary's automobile and traveled west on Highway 80 toward the City of Vicksburg. Officer Reed and one of the FBI agents followed in one car and two FBI agents followed in another. After these vehicles had traveled some distance, Officer Reed turned on his blue light and outside speaker and ordered Pritchard to stop the car, get out and put his hands on top of the car. Pritchard complied, and in doing so, left the door open. As Reed approached he saw a loaded 38-calibre Colt pistol lying on the floor of the automobile. Reed then asked Pritchard if he had been in any previous trouble and Pritchard replied, "I just got out of the big house." Reed then placed Pritchard under arrest on the gun charge. Nell McMillan refused to get out of the automobile, and one of the FBI agents bodily took her out of the car, and found a fully loaded automatic pistol in the glove compartment.
At this point, Officer Reed advised Pritchard of his Miranda rights and the search of the glove compartment followed, after which the trunk of the car was also searched. They found a large crowbar, a smaller crowbar, a large sledgehammer, and a small screwdriver.
After the search of the car, Officer Reed and the FBI agents returned to the motel and went into the room occupied by Julian McMillan, who ran to the bathroom. In this room, they seized a suitcase containing a large amount of change. One of the coins had a bullet hole in it, and there were four silver dollars. Two other officers went to the room occupied by Singletary; they knocked, were invited in, and they observed a weapon on a night stand by the bed. All of the occupants of the three rooms were arrested at that time.
The proof showed that paint, scraped from the crowbars and the sledgehammer, was identical with samples of paint taken from the safe which had been forced open in the burglary of the store at Benoit. The coins were identified as those stolen from the Benoit store. At the time Pritchard, Singletary and the other co-indictees were arrested, the officers did not know of the burgalry of the Benoit store.
The principal assignment of error raises the question: Did the trial judge err in admitting in evidence the two guns, a screwdriver, a prybar or crowbar, and a sledgehammer found in defendant's automobile when it was searched subsequent to Pritchard's arrest? Most of the argument *876 on behalf of Singletary is directed to the question whether the officers had probable cause to stop and arrest Singletary.
In our view of the case, the question is whether the officers had sufficient facts to justify their action in stopping the automobile for investigative purposes. The proof clearly shows that this was their purpose and that Singletary was arrested after Deputy Reed had looked through the open door of the automobile and saw the gun partly hidden by the seat.
This Court has held in a number of cases that an arrest begins when the pursuit for the purpose of making an arrest begins. Pollard v. State, 233 So.2d 792 (Miss. 1970). The present case does not involve pursuit for the purpose of making an arrest. It does involve the question whether the officers had sufficient information to justify stopping the automobile for investigatory purposes. Police activity in preventing crime, detecting violations, making identifications, and in apprehending criminals may be divided into three types of action: (1) Voluntary conversation: An officer may approach a person for the purpose of engaging in a voluntary conversation no matter what facts are known to the officer since it involves no force and no detention of the person interviewed; (2) Investigative stop and temporary detention: To stop and temporarily detain is not an arrest, and the cases hold that given reasonable circumstances an officer may stop and detain a person to resolve an ambiguous situation without having sufficient knowledge to justify an arrest; (3) Arrest: An arrest may be made only when the officer has probable cause.
The present case involves stop and detention, and references to the other kinds of police intrusion are made only to put the question in perspective.
The beginning of the inquiry is the Fourth Amendment whose standard of reasonableness requires that in every situation the officer must make the intrusion into the person's privacy as limited as reasonably possible. On the other hand, as aptly stated in United States v. West, 460 F.2d 374 (5th Cir.1972), "The local policeman ... is also in a very real sense a guardian of the public peace and he has a duty in the course of his work to be alert for suspicious circumstances, and, provided that he acts within constitutional limits, to investigate whenever such circumstances indicate to him that he should do so." See also United States v. Allen, 472 F.2d 145 (5th Cir.1973).
The Supreme Court of the United States in several recent opinions recognized the need for balancing these competing considerations. In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Court approved the action of the local officer who observed three men as they appeared to be "casing" a store for robbery purposes. The officer approached the men, identified himself, and asked their names. Upon receiving a mumbled reply, the officer frisked them for weapons, found pistols on two of them whom he arrested for carrying concealed weapons. The Court said it was not deciding the question whether the stop was reasonable under the Fourth Amendment. In holding that the officers acted reasonably in making the limited search, the Court said:
Officer McFadden had reasonable grounds to believe that petitioner was armed and dangerous, and it was necessary for the protection of himself and others to take swift measures to discover the true facts and neutralize the threat of harm if it materialized. The policeman carefully restricted his search to what was appropriate to the discovery of the particular items which he sought. Each case of this sort will, of course, have to be decided on its own facts. We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity *877 may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken. 392 U.S. at 30, 31, 88 S.Ct. at 1884.
In a concurring opinion in Terry, Justice Harlan said that it was implicit in the affirmance of the case that the officer had a right to stop the suspects:
Officer McFadden had no probable cause to arrest Terry for anything, but he had observed circumstances that would reasonably lead an experienced, prudent policeman to suspect that Terry was about to engage in burglary or robbery. His justifiable suspicion afforded a proper constitutional basis for accosting Terry, restraining his liberty of movement briefly, and addressing questions to him, and Officer McFadden did so. 392 U.S. at 33, 88 S.Ct. at 1886.
In Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), the Court unequivocably settled the question of the lawfulness of an investigative stop where there is no probable cause to arrest if the officer acts reasonably. In Adams, the Court said:
In Terry this Court recognized that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." Id., [392 U.S.] at 22, 88 S.Ct. [1868], at 1880. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. See id., at 23, 88 S.Ct. [1868], at 1881. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. Id., at 21-22, 88 S.Ct. [1868], at 1879-1880; see Gaines v. Craven, 448 F.2d 1236 (CA9 1971); United States v. Unverzagt, 424 F.2d 396 (CA8 1970).
The Court recognized in Terry that the policeman making a reasonable investigatory stop should not be denied the opportunity to protect himself from attack by a hostile suspect. "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," he may conduct a limited protective search for concealed weapons. 392 U.S., at 24, 88 S.Ct. [1868], at 1881. The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence, and thus the frisk for weapons might be equally necessary and reasonable, whether or not carrying a concealed weapon violated any applicable state law. So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose. Id., at 30, 88 S.Ct., [1868] at 1884.
*878 In the present case, the officers knew that two banks had been robbed and that three men and two women were involved. They knew that three men and two women were staying at the Scottish Inn Motel in rooms registered to one man, Pritchard. Two of the men fitted the description of the bank robbers to a "T." The occupants of the rooms were reported to be counting money and a gun was seen in another room. The officers applied their experience to this state of facts and determined that further investigation was necessary to resolve these ambiguous but highly suspicious circumstances. As stated in Adams, the officers were not required by the Fourth Amendment to shrug their shoulders and do nothing simply because they did not have the precise level of information necessary for probable cause to arrest Pritchard.[1]
This Court has approved investigative stops in at least two recent cases. In Chapman v. State, 284 So.2d 525 (Miss. 1973), the suspects were detained (they had been stopped for speeding) until they were identified by the victims of the crime. The Court said:
A crime had been committed. The persons who committed the crime were fleeing from the scene of the crime in an automobile. [White v. State, 70 Miss. 253, 11 So. 632 (1892)]. They were apprehended because of a traffic violation, and when it appeared that they were apparently the persons who were said to have committed the crime, it became the duty of the officer to detain them. Section 2470, Mississippi Code 1942 Annotated (Supp. 1972). When they were identified, it became the duty of the sheriff to arrest them. [Bogard v. State, 233 So.2d 102 (Miss. 1970); McCollum v. State, 197 So.2d 252 (Miss. 1967); Fuqua v. State, 246 Miss. 191, 145 So.2d 152 (1962); Gilbert v. United States, 366 F.2d 923 (9th Cir.1966)]. After they were arrested, it became the duty of the officer to search them for weapons, evidence of the crime for which they were arrested, and means of escape, or other means by which they could injure themselves or others. [Shay v. State, 229 Miss. 186, 90 So.2d 209 (1956)]. Moreover, other evidence obtained by this search was admissible in the trial. [Bradshaw v. State, 192 So.2d 387 (Miss. 1966)].
In Dotson v. State, 260 So.2d 839 (Miss. 1972), a highway patrolman went to the post office to check his mail at about midnight and saw several mailboxes were open. He observed the defendant as he left the post office walking in a sideways manner and appearing to be hiding something in his hand. The officer asked the defendant to hold up a minute, and the defendant then began to walk away rapidly, whereupon the officer ordered the defendant to halt and hold up whatever he had in his hands. As the defendant held up a large bolt and a screwdriver, the officer noticed what appeared to be the imprint of a pistol in his pocket, with the handle tipping out. At this point, the officer placed defendant under arrest. This Court applied Terry v. Ohio, supra, and upheld the officer's actions and stated that the original intrusion upon the defendant's liberty was reasonable under the circumstances.
We hold that the officers acted reasonably in stopping the automobile to determine the identification of the occupants and whether they were involved in the bank robberies. The fact that they were not identified as the bank robbers did not invalidate the stop and the subsequent arrest. Bradshaw v. State, 192 So.2d 387 (Miss. 1966).
*879 The other questions raised have been carefully considered and found to be without merit.
Affirmed.
RODGERS, P.J., and PATTERSON, INZER, SUGG, WALKER and BROOM, JJ., concur.
NOTES
[1] Cf. Bradshaw v. State, 192 So.2d 387 (Miss. 1966), where the Court held there was probable cause to arrest.