# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-KA-00137-SCT

*BOBBY EARL WILSON, JR.*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/15/2004 |
| TRIAL JUDGE: | HON. FRANK G. VOLLOR |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | HENRY C. CLAY, III |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | G. GILMORE MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/08/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., EASLEY AND GRAVES, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

### PROCEDURAL HISTORY

¶1.    Bobby Earl Wilson, Jr., (Wilson) was indicted on July 20, 2004, by the Grand Jury of Warren County, Mississippi, for the armed robbery of Trustmark National Bank on March 30, 2004, feloniously taking $11,286 from the person of or from the presence of Mary Cunningham and Martha Robinson against their will by violence by the use of a knife, or by placing in fear of immediate injury by exhibition of a knife in violation of Miss. Code Ann. § 97-3-79.

¶2.     Wilson was also indicted on July 20, 2004, as a habitual offender having been convicted twice previously for felonies under Miss. Code Ann. § 99-19-81.   On August 25, 2004, the State filed a motion to amend the indictment of July 20, 2004, to a habitual offender under Miss. Code Ann. § 99-19-83.   The habitual portion of the indictment was subsequently amended on September 28, 2004, to charge Wilson as a violent habitual offender under Miss. Code. Ann. § 99-19-83.

¶3.     Wilson was tried before a jury, and the jury returned a verdict finding Wilson guilty of the lesser-included offense of robbery.   The trial court conducted a sentencing hearing. Wilson was sentenced as a habitual offender to serve a term of life without parole in the custody of the Mississippi Department of Corrections under Miss. Code Ann. § 99-19-83. Wilson appeals to this Court in forma pauperis.

**FACTS**

¶4.     Wilson robbed the Trustmark National Bank located at Mission and Grove Streets in Vicksburg, Mississippi.   Robinson testified that she saw Wilson go to the drive-through window operated by Cunningham.   She saw Cunningham putting money in a Wal-Mart bag, and she knew the bank was being robbed.   Wilson signaled Robinson to come to Cunningham's window where Robinson put money in the Wal-Mart bag.   Wilson told Robinson it was not enough money, and he had Cunningham go to the drive-through window to get more money. Robinson identified Wilson from a photographic line-up.

¶5.     Georgia Knox, the drive-through teller, testified she saw Cunningham putting money in a Wal-Mart bag and heard Wilson say that he wanted the money from her window.   Knox put

2

the money from her drawer in the Wal-Mart bag. Knox testified she saw Wilson's knife on the counter. Knox felt threatened and afraid. Wilson left the bank with the money.

¶6. Officer Leonce Young of the Vicksburg Police Department received a dispatch call that the bank had been robbed. Officer Young saw Wilson crouched down behind cars and then saw Wilson run. Officer Young followed, caught, and handcuffed Wilson. When Officer Young asked Wilson his name, Wilson responded, "bank robber." Officer Young testified that Wilson had red dye on his hands and shirt and that a steak knife was recovered from Wilson.

¶7. After Officer Young radioed for assistance, Captain Mark Culbertson arrived to assist him. Officer Young asked Wilson where the money was. Wilson responded, "It's your job to find the money, I rob banks." Captain Culbertson testified that a steak knife was recovered from Wilson.

¶8. Sergeant Virgil Woodall, a crime scene investigator, testified that he collected the steak knife from Wilson's pocket. Sergeant Woodall also collected the money and Wilson's clothes. Debra Kinnebrew, the bank's branch manager, testified that the money recovered was the same money taken from the bank.

**DISCUSSION**

I. **Amended Indictment-Habitual Status**

¶9. "It is fundamental that courts may amend indictments only to correct defects of form, however, defects of substance must be corrected by the grand jury." *Evans v. State*, 813 So. 2d 724, 728 (Miss. 2002) (quoting *Mitchell v. State*, 739 So. 2d 402, 404 (Miss. Ct. App. 1999)). "It is well settled . . . that a change in the indictment is permissible if it does not materially alter facts which are the essence of the offense on the face of the indictment as it

3

originally stood or materially alter a defense to the indictment as it originally stood so as to prejudice the defendant's case." **Miller v. State**, 740 So. 2d 858, 862 (Miss. 1999).

¶10.    Wilson argues that the trial court erred in allowing the State to amend the original indictment to charge him as a habitual offender under Miss. Code Ann. § 99-19-83.    However, Mississippi law allows an amendment of an indictment to charge a defendant as a habitual offender even after the jury has returned a guilty verdict.    **Torrey v. State**, 891 So. 2d 188, 195 (Miss. 2004).    Here, Wilson was put on notice the State sought to amend the indictment months before trial.    Likewise, the trial court allowed the amendment long before trial began. Rule 7.09 of the Uniform Rules of Circuit and County Court Practice allows for the amendment of an indictment in order to charge an offender as a habitual offender.    Rule 7.09 reads:

> All indictments may be amended as to form but not as to the substance of the offense charged.    Indictments may also be amended to charge the defendant as an habitual offender or to elevate the level of the offense where the offense is one which is subject to enhanced punishment for subsequent offenses and the amendment is to assert prior offenses justifying such enhancement (e.g., driving under the influence, Miss. Code Ann. § 63-11-30).    Amendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised.

U.R.C.C.C. 7.09.    Thus, an indictment may be amended to charge an offender as a habitual offender only if the offender is given a "fair opportunity to present a defense and is not unfairly surprised." **Id**.; **Adams v. State**, 772 So. 2d 1010, 1021 (Miss. 2000).

¶11.    The two prior felonies charged in the original July 20, 2004, indictment were: (1) grand larceny in the Circuit Court of Warren County, Mississippi, on or about August 5, 1994, Cause no. 1171V, convicted and sentenced to serve five years, and (2) bank robbery in the United

4

States District Court Southern District of Mississippi Western Division on or about June 21, 1999, in Cause no. 5:98cr12BrS, convicted and sentenced to serve seventy months.[1] The grand larceny was actually burglary of an automobile; however, the cause number, sentence, and the sentencing court information were correct. The revocation order on the burglary of an automobile reflected the charge was for attempted grand larceny. Wilson was provided adequate information to inform him that the State sought habitual status and to put him on notice of the conviction to be used. Here, Wilson was not unfairly surprised by the amendment. The State sought to amend the indictment months before trial. The trial court allowed the amendment months before trial. Likewise, Wilson was originally indicted as a habitual offender under Miss. Code Ann. § 99-19-81.

¶12. Furthermore, it was not necessary for Wilson to prepare a defense based on the amended indictment because the habitual offender status did not affect the crimes with which Wilson was charged. *See Adams*, 772 So. 2d at 1021. This Court has held, "**prior offenses used to charge the defendant as an [sic] habitual offender are not substantive elements of the offense charged**." *Swington v. State*, 742 So. 2d 1106, 1118 (Miss. 1999) (emphasis added). In *Swington*, this Court went on to state:

> [T]he test of whether an accused is prejudiced by the amendment of an indictment or information has been said to be whether or not a defense under the indictment or information as it originally stood would be equally available after the amendment is made and whether or not any evidence [the] accused might have would be equally applicable to the indictment or information in the one form as in the other; if the answer is in the affirmative, the amendment is one of form and not of substance.

---

[1] Wilson served time in federal prison for two counts of bank robbery from 1998 through 2004. Wilson served time in the Mississippi State Penitentiary for automobile burglary from 1995 through 1997.

*Id.*[2]

¶13. We find the trial court did not err in amending the indictment to charge Wilson as a habitual offender under Miss. Code Ann. § 99-19-83.

## II. Motion to Suppress

¶14. During a suppression hearing, the trial court sits as the finder of fact. *Hunt v. State*, 687 So. 2d 1154, 1160 (Miss. 1996). "'Once the trial judge has determined at a preliminary hearing, that a confession is admissible, the defendant/appellant has a heavy burden in attempting to reverse that decision on appeal.'" *Hunt*, 687 So. 2d at 1160 (quoting *Sills v. State*, 634 So. 2d 124, 126 (Miss. 1994)). The trial court's decision will not be reversed on appeal unless it is manifestly in error, or is contrary to the overwhelming weight of the evidence. *Hunt*, 687 So. 2d at 1160. "Where the evidence is contradictory, this Court 'generally must affirm.'" *Id.* (quoting *Lesley v. State*, 606 So. 2d 1084, 1091 (Miss. 1992)).

¶15. Wilson argues on appeal that the trial court erred in denying his motion to suppress the statements he made when he was stopped by Officer Young. Wilson contends that Officer Young lacked probable cause to stop him. However, Officer Young was aware from the dispatch call that the bank had been robbed, and he was in route to the bank. On the way to respond, Officer Young testified that he saw an individual that appeared to be a shoplifter at the County Market. The individual, later identified as Wilson, was crouched behind cars when the police passed. He then ran down the street and behind a school bus.

---

[2] "The plain language of URCCC 7.09, concerning amendment of indictments, makes it readily apparent that prior offenses used to charge the defendant as an [sic] habitual offender are not substantive elements of the offense charged." *Williams v. State*, 708 So. 2d 1358, 1365 (Miss. 1998) (Banks, J., concurring).

¶16. Officer Young suspected he was a shoplifter based on his conduct of running and going behind the school bus. Officer Young decided to investigate. He ordered the individual to stop and told him to come here. Officer Young asked the individual his name, and he responded, "bank robber." Officer Young testified that Wilson was covered in red dye. Officer Young cuffed Wilson and called for assistance. Captain Culbertson and Officer Woodall responded. When asked where the money was, Wilson responded, "It's your job to find the money, I rob banks." A steak knife was recovered from Wilson.

¶17. Wilson argues that because Officer Young thought he was a shoplifter when he stopped him, Officer Young was stopping a suspect for a misdemeanor crime not committed in his presence. This, Wilson contends, resulted in an illegal arrest, and Wilson's statements were the fruit of the poisonous tree. Therefore, Wilson argues the trial court erred by not suppressing the statements. However, Wilson's argument is incorrect and directly contradicts the holdings of this Court. The distinction is not whether the crime was a misdemeanor or a felony for an investigative stop, but whether the officer had reasonable suspicion to believe that a crime had been committed.

¶18. In *Floyd v. City of Crystal Springs*, 749 So. 2d 110, 114-15 (Miss. 1999), this Court stated:

> The constitutional requirements for an investigative stop and detention are less stringent than those for an arrest. This Court has recognized that **"given reasonable circumstances an officer may stop and detain a person to resolve an ambiguous situation without having sufficient knowledge to justify an arrest,"** that is, on less information than is constitutionally required for probable cause to arrest. *Singletary v. State*, 318 So. 2d 873, 876 (Miss. 1975). *See also McCray v. State*, 486 So. 2d 1247, 1249 (Miss. 1986).

The United States Supreme Court approved this investigatory procedure in ***Terry v. Ohio***, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed.2d 889 (1968), and ***Adams v. Williams***, 407 U.S. 143, 92 S. Ct. 1921, 32 L. Ed.2d 612 (1972). In determining whether there exists the requisite "reasonable suspicion, grounded in specific and articulable facts," the court must consider whether, taking into account the totality of the circumstances, the detaining officers had a "particularized and objective basis for suspecting the particular person stopped of criminal activity." ***Cortez***, 449 U.S. at 417-18, 101 S. Ct. at 694-95 (citing ***Brown v. Texas***, 443 U.S. 47, 51, 99 S. Ct. 2637, 2640, 61 L. Ed.2d 357 (1979)).

(Emphasis added.)

¶19.    In ***Singletary***, 318 So. 2d at 876, this Court held:

Police activity in preventing crime, detecting violations, making identifications, and in apprehending criminals may be divided into three types of action . . . (2) Investigative stop and temporary detention: To stop and temporarily detain is not an arrest, and the cases hold that given reasonable circumstances an officer may stop and detain a person to resolve an ambiguous situation without having sufficient knowledge to justify an arrest . . . .

¶20.    The United States Supreme Court has "unequivocally settled the question of the lawfulness of an investigative stop where there is no probable cause to arrest if the officer acts reasonably." ***Singletary***, 318 So. 2d at 877. Thus, the test is one of reasonableness, and neither this Court nor the United States Supreme Court has articulated a concrete rule to determine what circumstances justify an investigatory stop. ***Green v. State***, 348 So. 2d 428, 429 (Miss. 1977); *see* ***Floyd***, 749 So. 2d at 115. The courts approach this question on a case-by-case basis. ***Green v. State***, 348 So. 2d at 429; ***Floyd***, 749 So. 2d at 115.

¶21.    Furthermore, this Court has specifically addressed the felony/misdemeanor distinction raised by Wilson on appeal. ***Floyd,*** 749 So. 2d at 117. In ***Floyd***, this Court held that the felony/misdemeanor distinction is not the correct test by which to evaluate whether an investigative stop is reasonable. ***Id.*** The Court determined that the proper question is not

8

whether the person is suspected of a felony or misdemeanor, but whether a law enforcement officer acted reasonably in stopping the person to investigate a complaint short of arrest. *Id*.

¶22. We find this assignment of error is without merit.

### III. J.N.O.V. and Weight of the Evidence

¶23. Wilson made a post-trial motion for new trial or J.N.O.V. The trial court subsequently entered its order denying Wilson's motion for a new trial or J.N.O.V.

#### A. J.N.O.V.

¶24. A motion for J.N.O.V. challenges the legal sufficiency of the evidence. *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993). "[T]his Court properly reviews the ruling on the last occasion the challenge was made in the trial court." *Id*. at 778. Here, this occurred when the trial court denied Wilson's motion for J.N.O.V.

¶25. In *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005), this Court set out the standard of review for legal sufficiency as follows:

> In *Carr v. State*, 208 So. 2d 886, 889 (Miss. 1968), we stated that in considering whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows "beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction."

The Court stated:

> Should the facts and inferences considered in a challenge to the sufficiency of the evidence "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is for the appellate court to reverse and render. *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985) (citing *May v. State*, 460 So. 2d 778, 781 (Miss. 1984)); see also *Dycus v. State*, 875 So. 2d 140, 164 (Miss. 2004). However, if a review of the evidence reveals that

9

it is of such quality and weight that, "having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence will be deemed to have been sufficient. *Edwards*, 469 So. 2d at 70.

¶26. Considering the evidence in the light most favorable to the State, we find there was sufficient evidence to convict Wilson of robbery. Wilson was convicted by the jury on the lesser included offense of robbery.[3] Miss. Code Ann. § 97-3-73 defines robbery as follows:

> Every person who shall feloniously take the personal property of another, in his presence or from his person and against his will, by violence to his person or by putting such person in fear of some immediate injury to his person, shall be guilty of robbery.

¶27. Wilson argues that the facts of the case did not support a robbery conviction. However, a review of the record refutes that assertion and demonstrates that the elements of robbery as defined in Miss Code Ann. § 97-3-73 were established. Robinson testified she saw Cunningham putting money in a Wal-Mart bag.[4] Wilson was at Cunningham's window. Robinson realized the bank was being robbed when she saw Cunningham putting money in a Wal-Mart bag.

¶28. Robinson testified that Wilson signaled her to the window and told her "You too." Cunningham went over to Robinson's window with the bag. Robinson complied and emptied her drawer into the bag. Wilson then said, "That's not enough." Robinson testified that she saw Cunningham go over to the drive-through window to get more money. When asked if she was scared, Robinson testified in the affirmative, "Of course." Robinson did not see a knife.

---

[3] Wilson was not found guilty of armed robbery.

[4] Robinson and Cunningham were named in the indictment. Cunningham did not testify at trial. Cunningham's son had died the day of trial.

10

¶29. Knox testified she saw Wilson's knife on the counter and that she was afraid. Knox testified she put the money from her drive-through window into the Wal-Mart bag. Wilson left the bank with the money. Robinson then yelled that the bank had been robbed, and the bank was locked.

¶30. When Officer Young stopped Wilson and asked him his name, Wilson responded, "bank robber." Officer Young cuffed Wilson. Officer Young testified that Wilson had red dye on his hands and his shirt and that a steak knife was recovered from Wilson. Officer Young radioed for assistance. Captain Culbertson responded to the call to assist Officer Young. When Wilson was asked where the money was, Wilson responded, "It's your job to find the money, I rob banks." Captain Culbertson testified that a steak knife was recovered from Wilson. Sergeant Woodall also responded to the scene. Sergeant Woodall testified that he collected the steak knife from Wilson's pocket. Sergeant Woodall also collected money found in a Wal-Mart bag and the clothes that Wilson was wearing.

¶31. Kinnebrew, the bank's branch manager, testified that the money recovered was the same money taken from the bank in the robbery. Kinnebrew testified the bank maintained an inventory of the bills in the branch location and that the bills are audited each month. These bills were not given out to regular customers but held in the event of a robbery. Kinnebrew testified that the bank used a red dye pack to color the bills taken. The red dye pack was activated by a sensor in the bank.

¶32. Accordingly, we find the trial court did not err in overruling Wilson's motion for J.N.O.V.

**B.    *New Trial***

11

¶33. A motion for new trial challenges the weight of the evidence. ***Sheffield v. State***, 749 So. 2d 123, 127 (Miss. 1999). A reversal is warranted only if the trial court abused its discretion in denying a motion for new trial. ***Id***. In ***Bush***, 895 So. 2d at 844, this Court set out the standard of review for weight of the evidence as follows:

> When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. ***Herring v. State***, 691 So. 2d 948, 957 (Miss. 1997). We have stated that on a motion for new trial, the court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. ***Amiker v. Drugs For Less, Inc.***, 796 So. 2d 942, 947 (Miss. 2000). However, the evidence should be weighed in the light most favorable to the verdict. ***Herring***, 691 So. 2d at 957. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, "unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict." ***McQueen v. State***, 423 So. 2d 800, 803 (Miss. 1982). Rather, as the "thirteenth juror," the court simply disagrees with the jury's resolution of the conflicting testimony. ***Id***. This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. ***Id***. Instead, the proper remedy is to grant a new trial.

¶34. Here, we find that no new trial is warranted as the jury's verdict is consistent with the weight of the evidence. Without again discussing the facts already stated within this opinion, the jury heard the testimony from all the witnesses called by the State. Wilson did not testify, and the defense did not call any other witnesses to testify. The jury determined that based on the evidence presented Wilson was guilty of the lesser-included offense of robbery rather than armed robbery.

12

¶35.    We find that the weight of the evidence presented by the State supported the jury's verdict.    Accordingly, we find the trial court did not err in overruling Wilson's motion for a new trial.

**CONCLUSION**

¶36.    For the foregoing reasons, the judgment of the Circuit Court of Warren County, is affirmed.

¶37.    **CONVICTION OF BANK ROBBERY AS A VIOLENT HABITUAL OFFENDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT PAROLE, AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., DIAZ, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR.  GRAVES, J., CONCURS IN RESULT ONLY.**