CARLTON, J.,
for the Court.
¶ 1. Danny Melton was convicted by a Lincoln County Circuit Court jury for multiple crimes relating to methamphetamine. On appeal, he contests the validity of a search of his premises. Finding no error, we affirm.
FACTS
¶ 2. On February 15, 2005, approximately six sheriffs deputies were involved in an undercover purchase of drugs from Melton’s neighbor, Jeff Wilson. A few minutes passed between the actual purchase and the arrival of the deputies. Upon arrival the deputies could not locate the marked purchase money. A search of the area included Melton’s adjacent yard. A few items that were commonly used in the manufacture and use of methamphetamine were located on Melton’s property. A search warrant was obtained and more incriminating items were found on Melton’s property which led to his arrest and indictment. The details of how the items were located that led to a search warrant are the subject of this appeal and are discussed below.
¶ 3. A grand jury returned a four count indictment against Melton for the unlawful possession of precursor chemicals with intent to manufacture methamphetamine, unlawful manufacture of methamphetamine, unlawful possession of less than one tenth of a gram of methamphetamine with intent to distribute, and conspiracy to manufacture methamphetamine.
¶ 4. A Lincoln County jury convicted Melton for the crimes of possession of precursor chemicals to manufacture methamphetamine, manufacturing methamphetamine, and possession of methamphetamine with intent to distribute. Melton’s appeal has been deflected to this Court.
DISCUSSION
¶ 5. Both of Melton’s arguments on appeal relate to the suppression of evidence and involve an alleged violation of his Fourth Amendment rights. Both the Fourth Amendment to the United States Constitution and Article 3, Section 23 of the Mississippi Constitution protect citizens from unreasonable searches and seizures. Our analysis is guided under a mixed standard of review in that “determinations of reasonable suspicion and probable cause should be reviewed de novo.” Dies v. State, 926 So.2d 910, 917 (Miss.2006) (citing Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (other citation omitted)). We recognize however that we are “restricted to a de novo review of the trial judge’s decision based on historical facts reviewed under the substantial evidence and clearly erroneous standards.” Dies, 926 So.2d at 918 (citation omitted).

*1070
1. Legality of Detention

¶ 6. Melton argues that he was illegally detained leading up to the search of his yard. He argues that law enforcement had no grounds for detaining him because the investigation concerned Melton’s neighbor and there was no evidence that Melton was involved in any criminal behavior with his neighbor.
¶ 7. Melton testified that he pulled into his driveway, his fiancé pulled in behind him, and then the Lincoln County Sheriff and a few people with the sheriff pulled into Melton’s driveway. Deputy Barefield was the only witness to testify at the suppression hearing. The deputy testified that when he approached Melton, the sheriff was already speaking with Melton. Melton stated that the sheriff informed him that the deputies next door were trying to locate some marked money relating to the drug bust at Wilson’s house and they might want to speak with Melton for a minute. Melton said he replied, “yes, sir.”
¶ 8. Melton, his fiancé, his daughter, her boyfriend, and Melton’s grandchild were standing in the front yard when Deputy Barefield approached and requested to see their money. They all complied with the request. None of the money matched the serial numbers of the marked money. Melton claims that at this point he requested that all of the law enforcement leave his property. Melton also claims that he told the officers that they were trespassing. Whether Melton made these statements is disputed.
¶ 9. Deputy Barefield testified that he communicated to Melton that the deputy would like to take a look around Melton’s yard in an effort to locate the missing money. Deputy Barefield testified that he explained to Melton that Melton had the right to refuse giving consent to the search. Wilson could have placed the money outside somewhere in his yard or in Melton’s adjacent yard as there was a few minutes delay between the purchase of drugs and the arrival of police. The deputy testified that Melton gave verbal consent to the search because Melton “stated okay.”
¶ 10. Melton either walked beside or trailed closely behind the deputy as the two walked along the fence line separating the two yards and into Melton’s backyard. Deputy Barefield became suspicious of some items on the ground in Melton’s yard. The items found in Melton’s yard included a two-liter bottle containing a white liquid substance, another bottle, and a piece of burnt tin foil. Melton stated he did not know what the objects were. One of the bottles had a strong ammonia smell. Deputy Barefield recognized that these items were used in the manufacture and use of methamphetamine.
¶ 11. The deputy communicated to Melton that information was received that Melton used his carport to manufacture methamphetamine. The original source of this information was not disclosed. Melton became visibly worried at this point and forbade any further access to his property including the carport, shed, and house. As soon as Melton made this statement denying further access without a search warrant, the deputy ceased any further search, departed from Melton’s property and proceeded to obtain a search warrant based only upon the items found in Melton’s yard. Other deputies watched the property while a search warrant was being obtained.
¶ 12. Based upon the suspicious items found in Melton’s yard, Deputy Barefield was able to obtain a search warrant for Melton’s property. A search of Melton’s carport and property revealed additional items which led to Melton’s arrest and *1071 indictment. Deputy Barefield testified that the search warrant was obtained because of the items found in Melton’s yard and not based upon any previous information that Melton was involved with manufacturing methamphetamine. The missing money was later found at Wilson’s property-
¶ 13. The Mississippi Supreme Court has stated that law enforcement activities can be divided into three types:
(1) Voluntary conversation: An officer may approach a person for the purpose of engaging in a voluntary conversation no matter what facts are known to the officer since it involves no force and no detention of the person interviewed; (2) Investigative stop and temporary detention: To stop and temporarily detain is not an arrest, and the cases hold that given reasonable circumstances an officer may stop and detain a person to resolve an ambiguous situation without having sufficient knowledge to justify an arrest; (3) Arrest: An arrest may be made only when the officer has probable cause.
Dies, 926 So.2d at 918 (quoting Singletary v. State, 318 So.2d 873, 876 (Miss.1975)).
¶ 14. Melton is arguing that his interaction with Deputy Barefield should be classified as an investigatory detention. In accordance with United States Supreme Court precedent, our Supreme Court has recognized that “given reasonable circumstances an officer may stop and detain a person to resolve an ambiguous situation without having sufficient knowledge to justify an arrest....” Wilson v. State, 935 So.2d 945, 950 (Miss.2006) (internal citations omitted). The Court has stated that the “United Stated Supreme Court has unequivocably settled the question of the lawfulness of an investigative stop where there is no probable cause to arrest if the officer acts reasonably.” Id. at 951 (citation omitted). We apply this reasonableness test on a case-by-case basis because no “concrete rule” has been articulated by either the United States Supreme Court or the Mississippi Supreme Court for the specific circumstances justifying an investigatory stop. Id.
¶ 15. In the present case, Melton was approached by law enforcement because of missing marked money used in an undercover purchase of contraband. There is credible evidence that Melton voluntarily complied with the request made by Deputy Barefield to view the money in his wallet. Testimony was presented that Melton gave consent to Deputy Barefield to look around the yard for the missing money. After suspicious items were discovered on Melton’s property, Melton withdrew his consent to search, with which the deputy immediately complied.
¶ 16. The nature of his encounter with the deputy seems more properly characterized as a voluntary conversation. The investigation that was taking place was not directed at Melton personally but involved Melton because of the close proximity of his yard and the possibility that the drug money may be located on his property. Melton obviously knew he had the right to terminate the search, and exercised that authority in demanding the search end and not continue without a search warrant. Under these circumstances there was no illegal detention.

2. Validity of Consent to Search

¶ 17. Melton also argues that he did not and could not have a valid consent to the search of his premises. Melton concludes that the circuit court erred in not suppressing the evidence against him because the evidence was unconstitutionally obtained. Melton alleges that he was coerced or intimidated into consenting to the search and relies on cases involving *1072 such situations. U.S. v. Morales, 171 F.3d 978, 988 (5th Cir.1999) (involuntary consent where officers with drawn weapons rushed into warehouse and ordered suspects to the floor); U.S. v. Ivy, 165 F.3d 397, 402 (6th Cir.1998) (involuntary consent where officer threatened to arrest suspect’s girlfriend and take child into protective custody).
¶ 18. We review the voluntariness of consent to search based on the “totality of the circumstances.” Culp v. State, 933 So.2d 264, 272 (Miss.2005). This consideration includes, “among other things: the location of the encounter, any overt coercion, the display of weapons, experience of the defendant with the criminal justice system, and the defendant’s age.” Id. (citing Jones v. State ex rel. Miss. Dep’t of Pub. Safety, 607 So.2d 23, 27 (Miss.1991)). There is no requirement that defendants be “affirmatively told that they had the right to refuse for their actions to be voluntary.” Id. (citing Schneckloth v. Bustamante, 412 U.S. 218, 234, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)).
¶ 19. At the time of the encounter, Melton was a grown adult. Melton had some level of awareness of interaction with law enforcement because of a previous encounter with the law many years ago. Of importance is that Melton actually ended the search demanding that the deputy obtain a search warrant. The consent was given at Melton’s home, not in seclusion with only a police presence. Armed police were present due to the ongoing search for the missing marked money but there is no indication that weapons were drawn.
¶ 20. Police interaction with Melton took place in the open area outside of Melton’s house with at least a couple of other adults present. Melton was certainly not in custody when consent was requested to search his yard. Custody requires that “a reasonable person would feel that they were going to jail and not just being temporarily detained.” Culp, 933 So.2d at 272. A determination of whether a person was in custody is determined by “whether a reasonable person felt they had the freedom to refuse police demands.” Id. There is evidence that the deputy sheriff warned Melton about his right to refuse consent to a search of his yard. Melton eventually exercised that right but only after suspicious items were located in his yard. Melton’s actions demonstrate that he felt that he had the freedom to refuse police demands, and in fact did so.
¶ 21. The record reflects that Melton initially consented to the search of his property but withdrew that consent when the suspicious items were found. Melton’s actions gave probable cause to believe that more evidence of the manufacture and use of methamphetamine was located on Melton’s property. There was adequate support for the trial judge to deny Melton’s motion to exclude the evidence.
¶ 22. A legally insignificant discrepancy was discovered while completing a comprehensive review of the record. Count three of the indictment charged that Melton did “feloniously ... have in his possession less than one tenth (.1) gram of methamphetamine ... in violation of Section 41-29-139.... ” Melton was convicted on this count as charged in the indictment. The sentencing order states that on count three Melton was convicted for the crime of “unlawful possession of less than one tenth of a gram of methamphetamine with intent to distribute.... ” The discrepancy is that Melton was charged with simple possession which falls within Section 41-29-139(c), not charged with the crime of possession with intent to distribute under Section 41-29-139(a)(l).
*1073 ¶ 23. On count three Melton received a sentence of four years imprisonment. The four year sentence is to run concurrently with the much longer sentences on counts one and two. This reflects that the sentencing order contains a clerical error because four years is the maximum sentence Melton could receive on count three for the crime of simple possession of less than one-tenth of a gram of methamphetamine. See Miss.Code Ann. § 41 — 29—139(c)(1)(a) (stating the maximum sentence for possession of less than one-tenth of a gram of methamphetamine is four years if indicted as a felony charge). Also, there are other obvious errors in the order, such as stating that the Melton is sentenced to “THIRTY (3) YEARS” on another count. Even so, the sentence on count three is within the statutory range for the indicted charge and conviction.
¶ 24. Courts of record have inherent power to correct clerical errors in criminal prosecutions and civil cases. Kitchens v. State, 253 Miss. 734, 179 So.2d 13, 14 (1965). We affirm Melton’s conviction and sentence but remand for the Circuit Court of Lincoln County to correct the sentencing order.
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF LINCOLN COUNTY OF CONVICTION OF COUNT I POSSESSION OF PRECURSOR CHEMICALS WITH INTENT TO MANUFACTURE METHAMPHETAMINE AND SENTENCE OF THIRTY YEARS; COUNT II UNLAWFUL MANUFACTURE OF METHAMPHETAMINE AND SENTENCE OF THIRTY YEARS; AND COUNT III POSSESSION OF LESS THAN ONE TENTH OF A GRAM OF METHAMPHETAMINE AND SENTENCE OF FOUR YEARS, ALL TO RUN CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH THE FIRST TWENTY YEARS TO SERVE AND FIVE YEARS OF REPORTING/SUPERVISED POST-RELEASE SUPERVISION AND FIVE YEARS OF NON-REPORTING/UNSUPERVISED POST-RELEASE SUPERVISION TO RUN CONSECUTIVELY TO EACH OTHER, A FINE OF $75,000 AND RESTITUTION OF $300, IS AFFIRMED. THE CAUSE IS REMANDED TO THE CIRCUIT COURT FOR CORRECTION OF THE SENTENCING ORDER CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.