307 So.2d 551 (1975)
Larry ROGERS
v.
STATE of Mississippi.
No. 48246.
Supreme Court of Mississippi.
February 10, 1975.
Dubard & Vail, Booneville, for appellant.
A.F. Summer, Atty. Gen., by Catherine Walker, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, ROBERTSON and WALKER, JJ.
ROBERTSON, Justice.
Larry Rogers and his older brother, Trice Rogers, were jointly indicted for the murder of E.G. Senter, Jr. A severance was granted Larry Rogers, and, after a full trial in the Circuit Court of Prentiss County, the jury returned a verdict of manslaughter. Larry Rogers was sentenced to 12 years in the State Penitentiary. He appeals.
About mid-afternoon, Thursday, May 21, 1970, Larry and Trice Rogers went to Lynn's Lounge to drink beer and shoot pool. Larry Rogers at the time was on leave from Fort Polk, Louisiana. The brothers had been in the lounge approximately 30 minutes when E.G. Senter, Jr., a single man about 42 years of age, entered the lounge. The owner of the lounge, Mrs. Lynn Jumper, testified that Senter had been drinking heavily and that because of this he was served only coffee. She also testified that Senter was wearing a diamond ring and a wrist watch, and had enough money in his billfold "to take care of anything he might need."
Larry Rogers walked over to Senter's table and talked to him for a while. Senter bought Larry a beer and then Larry bought Senter a beer. Larry and Trice left the lounge. Senter appeared to have passed out on the table, so Mrs. Jumper and the bartender, Jimmy Underwood, carried him out to his car, a two-tone green 1969 Mercury Monterey, and put him on the back seat. A short time later, the Rogers brothers returned and found Senter on the back seat of his car. Mrs. Jumper testified that she saw Larry drive off in Senter's Mercury, closely followed by Trice in his 1956 Cadillac. The lounge had a gravel parking lot and when they drove off in a hurry, dust and gravel flew up.
In his statement to Charlie Goforth, Mississippi Highway Patrol investigator, and Sheriff Mendel Wachsman of Prentiss County, Larry Rogers admitted pulling Senter out of the back seat of his Mercury *552 and hitting him in the face, after they had arrived at the Rogers home. They left the Cadillac there, and Larry, Trice and Senter, with Trice driving, proceeded in Senter's car to some bottom land a short distance from the Rogers' home. Larry remembered crossing two bridges before they got to the spot where they stopped and Larry dragged Senter out of the back seat of his car. Larry slapped him and hit him with his fists, and Trice went through Senter's pockets. Larry and Trice left Senter lying on the side of the road but said he wasn't dead because he was still moving. Trice drove Larry back to Leesville, Louisiana, in Senter's 1969 Mercury and Larry returned to Fort Polk, Louisiana, about noon, Friday, May 22.
On Sunday, May 24, Senter's body was found floating face down in the Little Brown Creek just north of the Rogers' home. The body was in three or four feet of water just off of a little bridge with no railings. No diamond ring, watch, wallet or identification of any kind was found on the body, and it was Monday, May 25, before the body was identified by Senter's brother-in-law.
Two autopsies were performed on the body, the first by Dr. Van B. Philpot, Jr., a pathologist, on Monday, May 25, and the second by Dr. J.T. Francisco, a professor of Pathology at the University of Tennessee Medical School in Memphis, on June 19, 1970. Dr. Francisco was also a forensic pathologist, County Medical Examiner for Shelby County, Tennessee, and Chief Medical Examiner for the State of Tennessee. Dr. Francisco testified that death was due to trauma and that the injuries found on Senter's body were consistent with a severe beating or kicking.
Larry waived extradition and was brought back from Fort Polk on June 5, 1970. On June 6, 1970, after having his rights explained and after signing a written waiver of his rights, Larry confessed to Officer Goforth and Sheriff Wachsman.
Shirley Barrett, a cousin of the Rogers brothers, testified that Trice Rogers spent the night of May 26, 1970, in their home in Bobo, Mississippi, that he was driving a late model Mecury Monterey with a dark green vinyl top over a pale green body, and that this car had an Itawamba County license tag on it. She stated that she saw this same car after it was recovered from the Mississippi River, but couldn't remember whether it had a license tag on it at that time. She also testified that Trice told her that he had taken Larry back to the army.
Although there were 15 assignments of error, they can be reduced to two:
1. The appellant was denied a fair trial because of his lack of adequate and competent counsel; and
2. The trial court was in error in overruling appellant's objections to the testimony of some of the State's witnesses and in overruling Motions of the appellant, for a directed verdict, to strike the testimony of Charlie Goforth as to appellant's confession, and to exclude the testimony of Dr. J.T. Francisco.
The record consists of three volumes containing 444 pages. We have carefully read and studied the record. This was a hard fought case, and appellant's counsel in the trial court conducted a vigorous and intelligent defense of his client. We think that appellant's trial counsel, who is now deceased, was adequate, effective and competent.
It is easy to be a Monday morning quarterback, and in retrospect to pick out defects and flaws in the way the game was played the preceding Saturday. The same is true in analyzing trial tactics and strategy of trial counsel, after the trial is over and the verdict in. We all have 20/20 vision in hindsight; the difficulty is in having 20/20 vision in foresight.
The appellant was indicted for murder and the jury could very well have found him guilty of murder. Defense counsel effectively persuaded the jury to return a verdict of manslaughter only, and the court *553 sentenced appellant to 12 years instead of 20. Results reached speak well for trial counsel.
We note also that the trial counsel was selected, retained and paid by the appellant. In Miller v. State, 231 So.2d 178 (Miss. 1970), this Court said: "An accused who retains his own attorney waives his right to complain of his counsel's competency."
Appellant has quoted, in support of his position, this statement from 74 A.L.R.2d 1403:
"[M]ost courts considering in a postconviction proceeding, the question of incompetency of retained counsel are generally agreed that the judgment of conviction is void when counsel's representation has been so inadequate as to make the trial a farce and a mockery of justice, thereby denying the accused a fair trial... ."
We cannot say that trial counsel's representation of appellant made the trial a farce and a mockery of justice. There is no merit in appellant's contention that he was denied a fair trial because of his lack of adequate and competent counsel. Appellant got a fair trial.
We have carefully reviewed and analyzed the trial court's rulings on objections of the appellant to the admission or exclusion of evidence and the trial court's rulings on motions of the appellant. We find no prejudicial error in any of these rulings.
Rule 11 of this Court is:
"No judgment shall be reversed on the ground of misdirection to the jury, or the improper admission or exclusion of evidence, or for error as to the matter of pleading or procedure, unless it shall affirmatively appear, from the whole record, that such judgment has resulted in a miscarriage of justice." (Emphasis added).
After all, a person charged with a crime is only entitled to a fair and impartial trial, not a perfect trial. State of Michigan v. Tucker, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974); McDonald v. State, 285 So.2d 177 (Miss. 1973); Stewart v. State, 229 So.2d 53 (Miss. 1969).
In our opinion, the appellant received a fair and impartial trial and a just result was reached. From the evidence adduced, the jury was justified in finding beyond a reasonable doubt that the appellant was guilty of manslaugher. In fact, if the jury had returned a verdict of guilty of murder, we would have been hard put to say that such a judgment "resulted in a miscarriage of justice."
The conviction and sentence are affirmed.
Affirmed.
GILLESPIE, C.J., RODGERS, P.J., and INZER, SMITH, SUGG and BROOM, JJ., concur.