369 So.2d 483 (1979)
Haney WARREN
v.
STATE of Mississippi.
No. 50927.
Supreme Court of Mississippi.
March 7, 1979.
Rehearing Denied April 25, 1979.
*484 Roy Pitts, Meridian, for appellant.
A.F. Summer, Atty. Gen. by Carolyn B. Mills, Special Asst. Atty. Gen., Jackson, for appellee.
Before ROBERTSON, WALKER and LEE, JJ.
ROBERTSON, Presiding Justice, for the Court:
Haney Warren was indicted, tried and convicted in the Circuit Court of Lauderdale County of murdering Ruth Helen Leggett. The court sentenced him to life imprisonment.
Shortly after 3:00 A.M. on August 24, 1977, Meridian Police Officers Booker and Gooden received a radio message from the police dispatcher to proceed to Apartment A-2, Magnolia Courts, where a disturbance and possible burglary had been reported. Officers Covert and McKinion, in car number 7, which was back-up car for car number 4, also received the radio message and proceeded toward Apartment A-2, Magnolia Courts.
About two blocks from Apartment A-2, Officers Booker and Gooden noticed Warren walking at a fast pace. They stopped and questioned him and then proceeded on toward Apartment A-2. A minute later, Officers Covert and McKinion, in car number 7, stopped Warren. Covert testified that Warren was wet from head to toe, had blood spattered on his white T-shirt, and had a torn piece of red, white and blue shirt wrapped around his scratched and bleeding hand. Warren told Officer Covert that he had been in a fight at the Paradise Club, that his hand was scratched in the fight, and that he had wrapped a piece of cloth that he had gotten at his uncle's house around his hand to stop the bleeding. Warren also told Covert that he was going home to the George Reese Apartments. Warren was about 10 blocks away from the direct route from the Paradise Club to the George Reese Apartments, so under all these circumstances, Covert called for car number 4 to return, and asked Warren to get on the back seat of car number 4.
Both police cars then proceeded to Apartment A-2, Magnolia Courts, where they found Ruth Helen Leggett dead on the kitchen floor in a pool of blood. She had been badly beaten about the head, and there was blood and water all around her body. In the living room they found two little children beaten about their heads, and two more young children in a bedroom off the hallway. One had been beaten and the other appeared uninjured.
Detective Flaherty was called to the scene to investigate. He arrived about 4:00 A.M. and, after checking the scene, placed Warren under arrest, explained his Miranda rights to him, and had him transported to the police station.
At the police station, Warren was given other clothes, and his clothes were sent to the F.B.I. Crime Laboratory for examination.
F.B.I. Agent Richard D. Watson testified that he found human blood on the shoes, blue jeans, white mesh T-shirt and undershorts of Warren. F.B.I. Agent Robert E. Neill testified that he found cloth fibers from the deceased's jumpsuit and skirt on the blue jeans of Warren.
In his first assignment of error, defendant contends that the trial court erred in overruling his motion to suppress and to exclude from the evidence all the items of clothing and other articles taken from him on the morning of August 24, 1977, and all laboratory reports thereon, on the ground that he was arrested without probable cause and his clothing was, therefore, unlawfully taken from him.
Warren was first stopped and questioned by Officers Booker and Gooden, then about a minute later by Officers Covert and McKinion. Both conversations took place about 3:30 A.M., two blocks from the scene of a possible burglary which these officers had been requested to investigate. Warren *485 was dripping wet, blood was splashed on the front of his white T-shirt, and his right hand was scratched and bleeding and partially wrapped in a torn piece of red, white and blue shirt. In our opinion, this was merely an investigative stop and temporary detention that any alert police officer would make under similar suspicious and ambiguous circumstances.
In Singletary v. State, 318 So.2d 873 (Miss. 1975), this Court said:
"Police activity in preventing crime, detecting violations, making identifications, and in apprehending criminals may be divided into three types of action: (1) Voluntary conversation: An officer may approach a person for the purpose of engaging in a voluntary conversation no matter what facts are known to the officer since it involves no force and no detention of the person interviewed; (2) Investigative stop and temporary detention: To stop and temporarily detain is not an arrest, and the cases hold that given reasonable circumstances an officer may stop and detain a person to resolve an ambiguous situation without having sufficient knowledge to justify an arrest; (3) Arrest: An arrest may be made only when the officer has probable cause." 318 So.2d at 876.
In Singletary, we also quoted with approval this language from United States v. West, 460 F.2d 374 (5th Cir., 1972):
"`The local policeman ... is also in a very real sense a guardian of the public peace and he has a duty in the course of his work to be alert for suspicious circumstances, and, provided that he acts within constitutional limits, to investigate whenever such circumstances indicate to him that he should do so.' See also United States v. Allen, 472 F.2d 145 (5th Cir.1973)." 318 So.2d at 876.
The trial court was correct in overruling appellant's motion to suppress and exclude.
The appellant next contends that the trial court erred in admitting a picture of the partially clad, bloody body of the victim, and also in admitting evidence of the contemporary assaults on her small children. No objection was made to the testimony of the investigating officers as to the appearance of the victim's body and the condition of the four small children. There was only a general objection when the picture was offered into evidence. This Court has said many times that a general objection will not do; the objection must be specific. Lay v. State, 310 So.2d 908 (Miss. 1975); Boring v. State, 253 So.2d 251 (Miss. 1971). It is largely a question for the trial court as to whether a particular picture has any probative value. In our judgment the picture did have definite probative value and the court was not in error in admitting it into evidence. The evidence of the children's condition was admissible as being part of the res gestae. Brooks v. State, 242 So.2d 865 (Miss. 1971); Ford v. State, 226 So.2d 378 (Miss. 1969); Lee v. State, 244 Miss. 813, 146 So.2d 736 (1962).
The appellant complains that the trial court erred in granting this instruction:
"The Court instructs the Jury that under the law each and every Juror must agree upon a verdict as the verdict of the Jury. In other words, all twelve of the Jurors must agree upon the verdict of this case."
No objection was made to this instruction in the trial court; it is being questioned for the first time on appeal. Supreme Court Rule 42 provides in part:
"It is, therefore, the rule of this Court that no assignment of error based on the giving of an instruction to the jury will be considered on appeal unless specific objection was made to the instruction in the trial court stating the particular ground or grounds for such objection."
In Rayburn v. State, 312 So.2d 454 (Miss. 1975), this Court said:
"The necessity for these rules is obvious. It is essential that specific objections to instructions be made to the trial judge, in order that errors and omissions may be corrected or supplied before any possible harm can result. A defendant may not tacitly reserve an objection at that point, or wait until after a guilty verdict is returned, meanwhile having *486 availed himself of the chance to be acquitted, or call attention to an omission or error for the first time on appeal in order to have his conviction set aside." 312 So.2d at 455.
Appellant contends that fatal error was committed when Detective Flaherty on cross-examination by defense counsel stated that Kevin Leggett, the young son of the deceased, when shown a picture of a line-up, first identified Johnny Windom and then later identified Haney Warren as his assailant.
The next day the Court instructed the jury to completely disregard the picture of the line-up and Detective Flaherty's testimony on Kevin Leggett's identification of defendant.
In Holifield v. State, 275 So.2d 851 (Miss. 1973), we also said that when defense counsel elicits the testimony complained of any valid objections are waived by the defendant. So the trial court was correct in overruling appellant's motion for a mistrial.
Lastly, appellant contends that he was denied effective assistance of counsel at the trial level. We have carefully reviewed this voluminous record and are of the opinion that trial counsel effectively represented defendant in a very vigorous, aggressive and creditable manner. In Rogers v. State, 307 So.2d 551 (Miss. 1975), we said:
"It is easy to be a Monday morning quarterback, and in retrospect to pick out defects and flaws in the way the game was played the preceding Saturday. The same is true in analyzing trial tactics and strategy of trial counsel, after the trial is over and the verdict in." 307 So.2d at 552.
There being no reversible errors committed by the trial court, the conviction and sentence are affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.