# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-KA-01610-SCT

*CHRISTOPHER ROSENTHALL*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 7/19/2001 |
| TRIAL JUDGE: | HON. C. E. MORGAN, III |
| COURT FROM WHICH APPEALED: | GRENADA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHNNIE E. WALLS, JR. |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: |
| | JOHN R. HENRY |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/08/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE PITTMAN, C.J.,  EASLEY AND GRAVES, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.     In the Circuit Court of Grenada County, Mississippi, Christopher Rosenthall was convicted of capital murder and sentenced to a term of life imprisonment without parole in the custody and control of the Mississippi Department of Corrections.  Aggrieved by this conviction and sentence, Rosenthall appeals and raises the following issues:

> I.      WHETHER THE DEATH-QUALIFICATION OF THE JURY DURING VOIR DIRE DEPRIVED ROSENTHALL OF DUE PROCESS OF LAW BY DENYING HIM A JURY OF HIS PEERS ON THE ISSUE OF GUILT BY DISPROPORTIONATELY ELIMINATING AFRICAN-AMERICAN JURORS IN THE COURSE OF JURY SELECTION.

II.      WHETHER THE TRIAL COURT ERRED IN REFUSING PROFFERED INSTRUCTION D-4.

III.    WHETHER THE TRIAL COURT ERRED IN REFUSING PROFFERED INSTRUCTION D-2.

## FACTS

¶2. At approximately 4:30 a.m., on January 8, 2000, John Rogers, a Grenada, Mississippi, businessman, was robbed and murdered in Grenada. Rogers and his family owned and operated several businesses in Grenada, including a convenience store, check cashing business, a tax service and service station. That morning, Rogers picked up an employee, Ms. Willie Mae Norwood. They arrived at his business, "The Little Widget," and Rogers was shot and killed as he exited his vehicle. Rosenthall and James Pickens then took Rogers's briefcase, which contained more than $20,000, some business records, credit cards, food stamps, food stamp stubs, and other assorted items. Although Norwood saw the entire incident and was unharmed, she was unable to identify the assailants. She died of natural causes prior to the Rosenthall trial.

¶3. The evidence presented by the State sufficiently established the actions of Rosenthall and Pickens, the alleged co-defendant. Rosenthall and Pickens conspired to ambush Rogers and rob him. Pursuant to this plan, Rosenthall and Pickens laid in wait on the night before Rogers was killed. Rosenthall was armed with a shotgun at that time, but when he saw Rogers and attempted to fire, the shotgun misfired. On the following night, in the early hours of January 8, 2000, Rosenthall and Pickens again attempted to execute their plan. This time, Rosenthall was armed with a nine millimeter weapon. Rosenthall fired three shots killing Rogers.

## DISCUSSION

I. JURY SELECTION

¶4.     Rosenthall makes two different arguments under issue one.  First, he argues that the death-qualification of the jury during voir dire deprived him of due process of law by denying him a jury of his peers by eliminating African-American jurors.  Second, he suggests that one jury should be empaneled to try the question of the accused's guilt and another jury should be empaneled to determine the sentence for the crime.

### a. Elimination of African-American Jurors

¶5.     Rosenthall  argues that the State's systematic exclusion of African-Americans due to their opposition to capital punishment denied him of his rights to due process and equal protection.  Rosenthall claims that the challenges for cause on the basis of anti-death penalty views resulted in exclusion of African-Americans from the jury.  He does not complain about the exclusion of any particular juror, only making a general objection to all of the jurors excused for cause on this basis.  After careful review of the record and Rosenthall's arguments, it appears as though Rosenthall is making a **Batson**[1] challenge, although it is not expressly stated.  A proper **Batson** challenge requires that when prosecutors exercise peremptory challenges against members of a distinct racial group, the State must advance articulable and racially neutral reasons for doing so.  **Griffin v. State,** 610 So.2d 354, 356 (Miss. 1992).  The record reflects that during the trial neither Rosenthall, nor the State nor the trial court recognized this issue as a **Batson** challenge.  No objection was made to the jury selection process. Therefore, the State was not given the opportunity to advance reasons as to why specific veniremen were excused.  This claim was not raised at

---

[1]**Batson v. Kentucky**, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

trial; therefore it is barred upon appeal. *Williams v. State*, 684 So.2d 1179, 1203 (Miss. 1996). ¶6.

After the selection of the jury, Rosenthall moved for a mistrial. Rosenthall alleged he was being denied a jury of his peers by the striking of jurors who had an opinion against the death penalty inasmuch as those jurors were mostly African-American jurors. The record reveals that of the twenty-three veniremen who were excused, eighteen were African-American. The test for determining whether a prospective juror's views on the death penalty justify removal is whether the trial court finds that "the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Manning v. State*, 735 So.2d 323, 335 (Miss. 1999). There were veniremen who stated that they were opposed to the imposition of the death penalty and who further stated they would not be able to disregard their religious beliefs. The trial court offered consideration regarding the jury and stated:

> The Court finds that this jury panel was drawn in accordance with the law by random selection by computer with all parties present. No objection was made to the selection process of the jury. The Court finds that the makeup of the jury has considerable members of each race and each gender on the panel. Some of the people that we have just been over were excused for reasons other than their position on the death penalty, so the figure of eighteen with four of them white does not accurately reflect why some of them have been excused. In any event, the questions were asked consistent with what the law requires in relation to the death penalty. They have been excluded because of their answers and not because of anything in relation to race one way or another. And therefore, the Motion is overruled."

This Court agrees with the trial court's rationale. Rosenthall has not demonstrated any prejudice in the jury selection. This issue is without merit.

### b. Independent Jury for Question of Guilt and Sentencing

¶7. Rosenthall contends that the manner in which death cases are tried should be fundamentally changed. He suggests that one jury should be empaneled to try the question of the accused's guilt upon

4

an indictment for capital murder and that another jury should be empaneled to determine the appropriate sentence.

¶8.    The sentence of death was not imposed upon Rosenthall. The verdict rendered in the case at bar was a life sentence. This life sentence bars any imposition of the death sentence upon retrial. Because Rosenthall did not receive the death penalty, his assignment of error is irrelevant and thus will not be considered. *See Austin v. State*, 784 So.2d 186, 192 (Miss. 2001). This assignment of error is without merit.

### II. PROFFERED JURY INSTRUCTION D-4

¶9.    Rosenthall alleges that the trial court erred in refusing to grant the proposed jury instruction D-4, which would have directed the jury to draw no inference against him from his failure to testify.

¶10.    Proposed jury instruction D-4 is reprinted as follows:

> The Court instructs the jury that the fact that Christopher Rosenthall did not take the witness stand and testify cannot be considered by you for any purpose and no inference whatsoever can be drawn against Christopher Rosenthall by reason of his decision not to take the stand and testify. The law gives every person charged with a crime the absolute and unqualified privilege of not testifying, and the law further requires that no inference adverse to the defendant can be drawn by you, the jury, by reason of his decision not to testify.

¶11.    Jury instruction C-4 is reprinted as follows:

> The burden of proof in this case is on the State to prove the defendant's guilt beyond a reasonable doubt. The defendant is not required to prove anything in this cause or to testify in his own behalf. You must not hold the fact that the defendant did not testify in this case against him or as any evidence of guilt.

¶12.    "The trial court enjoys considerable discretion regarding the form and substance of jury instructions." *Higgins v. State*, 725 So.2d 220, 223 (Miss. 1998). "A defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court

5

may refuse an instruction which . . . is fairly covered elsewhere in the instructions, or is without foundation in the evidence." *Id.* The trial court explained that this instruction was refused on the ground of repetitiveness in light of the fact that Instruction C-4 was given. Additionally, Rosenthall failed to demonstrate an abuse of discretion in the trial court's refusal of repetitive instructions. This assignment of error is without merit.

### III. PROFFERED INSTRUCTION D-2

¶13.    Rosenthall alleges that the trial court erred in refusing his proffered jury instruction D-2.

¶14.    Proposed jury instruction D-2 is reprinted as follows:

> Members of the jury, during the course of this trial, defense counsel cross-examined James Pickens about the fact that he had entered a plea of guilty prior to this trial to Felony Robbery and Felony Manslaughter in this case and had been sentenced to Twenty-Five years (25) for the Robbery and Twenty years (20) for the Manslaughter to run concurrent to each other.

> However, you are cautioned that you must not consider the fact that James Pickens has been convicted of robbery and manslaughter in this case as substantive evidence that Christopher Rosenthall is guilty of the charges for which he is on trial today.

¶15.    Jury instruction D-6 states:

> An accomplice is someone who knowingly, voluntarily and with common intent with the principal offender unites in the commission of a crime. James Pickens has admitted to you that he was an accomplice to the murder of Mr. Rogers.

> The Court instructs you that the testimony of an admitted accomplice should be viewed by you with great care, caution and suspicion and you should give it such weight and credit as you deem it is entitled.

¶16.    The record reflects that Rosenthall was attempting to impeach State's witness James Pickens with the fact of his conviction of crimes arising from the murder of the victim for the purpose of proving bias or interest in the case. Case law stipulates that "when defense counsel elicits the testimony complained of any valid objections were waived by the defendant." *Warren v. State,* 369 So.2d 483, 486 (Miss.1979).

6

¶17.   Additionally, no authority is cited by Rosenthall which alleges that he is entitled to have a cautionary instruction given concerning the impeachment of evidence that he elicited.  While D-2 was not given, D-6 was given.  We find jury instruction D-6 sufficient.  The trial court instructed the jury to regard the accomplice's testimony with great *suspicion* and to consider it with *caution*.  That is the essence of proposed instruction D-2.  Hence, the jury was properly instructed as to the law. ***Wheeler v. State***, 560 So.2d 171, 173 (Miss. 1990).  No further instruction was necessary.

## CONCLUSION

¶18.   For the reasons indicated above, we affirm the judgment below.

¶19.   **CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT, WITHOUT PAROLE, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**


**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, COBB, DIAZ, EASLEY AND CARLSON, JJ., CONCUR.**