KING, C.J.,
for the Court:
¶ 1. Cory Maye was convicted in the Circuit Court of Marion County of capital murder, and sentenced to death. The trial court set aside the sentence and sentenced Maye to life imprisonment without the possibility of parole. Aggrieved by his conviction, Maye appeals. Maye asserts the following alleged points of error:
I. Whether the evidence presented at trial was sufficient as a matter of law to sustain a conviction on the charged offenses.
II. Whether a new trial must be granted because the jury’s verdict was against the weight of the evidence.
*1143 III. Whether the testimony of the State’s forensic pathologist was admitted in error.
IV. Whether the circuit court erred in denying supplemental discovery of the credentials and practices of the State’s expert witness.
V. Whether newly discovered forensic evidence necessitates a new trial.
VI. Whether the circuit court erroneously deprived the defendant of his right to be tried in Jefferson Davis County, as guaranteed by Article 3, Section 26 of the Mississippi Constitution.
VII. Whether the circuit court erred in refusing defendant’s requested jury instructions.
VIII. Whether the State procured a search warrant through fraud, mandating a new trial.
IX. Whether the circuit court should have granted a motion to suppress due to the lack of probable cause supporting the search warrant.
X. Whether prosecutorial misconduct demands reversal of the conviction.
XI. Whether the defendant received effective assistance of counsel as guaranteed by the Sixth Amendment [to] the U.S. Constitution.
XII. Whether the sentence constituted cruel or unusual punishment in violation of Article 3, Section 28 of the Mississippi Constitution or the Eighth Amendment [to] the U.S. Constitution.
SUMMARY OF FACTS
¶ 2. This case involves the death of a police officer in the line of duty. On the evening of December 26, 2001, sometime after 10:00 p.m., Officer Ron Jones was shot and killed by Maye while the officer was attempting to execute a search warrant.
¶ 3. On the evening of December 26, 2001, Officer Ron Jones of the Prentiss Police Department secured two search warrants for a duplex located on Mary Street in Prentiss, Mississippi. Officer Ron Jones presented two affidavits and search warrants to Municipal Judge Donald Kruger. Officer Ron Jones signed the affidavits in the presence of Judge Kruger. The affidavits indicated that Officer Ron Jones had received information from a confidential informant who had within the prior twenty-four hours seen a large amount of marijuana stored in the duplex. Officer Ron Jones also attested that he had information from various sources that drugs were being sold out of the duplex. Officer Ron Jones attested that he had conducted surveillance of the duplex and had seen large amounts of traffic there at unusual hours. Judge Kruger discussed the search warrant with Officer Ron Jones, and later testified, “Yes, I talked with him about it. He said that he was reliable, a person, that the informant was, and that one or two arrests had been made because of this reliable, this so-called reliable informant.” Based on Officer Ron Jones’s affidavit, Judge Kruger issued two search warrants for the Mary Street duplex, one for the left side of the duplex identifying Jamie Smith and/or persons unknown as the occupants and one for the right side of the duplex, which listed persons unknown as the occupants.
¶ 4. After securing the search warrants, Officer Ron Jones selected a team from the Prentiss Police Department, the Bass-field Police Department, the Jefferson Davis County Sheriffs Department, and the Pearl River Basin Narcotics Task Force to assist him in executing the search warrants. The officers were separated into two teams: one team to search the *1144 left side of the duplex and the other team to search the right side of the duplex. Agent Darrell Graves led Officers Mike Brown, Earl Bullock, Allen Allday, and Terrence Cooley in executing the search warrant on Smith’s apartment, which was the left side of the duplex. Officer Ron Jones led Officers Stephen Jones, Darrell Cooley, and Phillip Allday in executing the search warrant on Maye’s apartment, which was the right side of the duplex.
¶ 5. The officers arrived at the Mary Street duplex in marked police cars. The officers parked the cars directly in front of the duplex. Officer Ron Jones’s team was the first to arrive at Maye’s side of the duplex. Officers Ron Jones, Stephen Jones, and Darrell Cooley took the front door with Officer Phillip Allday guarding the back door.
¶ 6. Maye testified that he was asleep on the “chair right beside the front door.” The officers testified that they went to the front door and loudly announced, “police, search warrant,” three times. Officer Darrell Cooley testified that he arrived at the door first. The front porch light was on. Officer Darrell Cooley testified that he loudly announced, “police,” then someone behind him announced, “search warrant.” He then kicked at the door. Officer Darrell Cooley testified that he yelled “police” a second time, then someone behind him announced “search warrant” loudly. Again, Officer Darrell Cooley kicked at the door.
¶ 7. Officer Stephen Jones reported that at this point he could see a light in the house through the cracked blinds. He testified that “[t]he blinds opened, it appeared that somebody opened the blinds and looked out.” When the blinds were opened, he noticed the light on inside of Maye’s apartment. Officer Darrell Cooley testified that this was the first time that he noticed a light on inside the apartment. Officer Darrell Cooley testified that he looked “back in toward the window on the door, and [he] could see a light back to the left side of the door.”
¶ 8. After noticing the light, Officer Darrell Cooley yelled, “police,” a third time with someone behind him announcing “search warrant.” When the door would not open, the officers decided to go to the back of the duplex to gain entry.
¶ 9. Officers Phillip Allday and Terrence Cooley were at the back of the duplex. Officer Terrence Cooley testified that he could “clearly hear” his fellow officers at the front of the house announce police, search warrant three times while he was at the back steps.
¶ 10. Officer Graves was in charge of executing the search warrant on Smith’s apartment (left side). Officer Graves confirmed that the officers on Maye’s side of the duplex had announced, “police, search warrant,” as Officer Graves approached Smith’s apartment. The occupants of Smith’s apartment (left side) responded to the announcements and opened them door to allow the officers to execute the search warrant.
¶ 11. Unable to gain entry through Maye’s front door, Officers Ron Jones and Stephen Jones went to the back door of Maye’s apartment, leaving Officer Terrence Cooley to guard the front door. Officer Stephen Jones testified that upon reaching the back door, Officer Ron Jones checked to see if the back door would open, and then announced, “search warrant, police, search warrant.” When the door would not open, Officers Ron Jones and Stephen Jones proceeded to the front of the house. Officers at the back of the duplex kicked the back door open. A couple of minutes passed between the officers’ first announcement at the front door and the back door being kicked in. After the *1145 back door was opened, Officer Ron Jones was called to the back of the house. He proceeded to enter the house, yelling “police.” He was met by shots fired from Maye’s gun. Officer Ron Jones immediately left Maye’s apartment stating that he had been shot. He was taken by Officer Stephen Jones to the hospital, where Officer Ron Jones died shortly after arrival. Officer Cooley apprehended Maye. A search of Maye’s apartment conducted later by officers yielded small amounts of marijuana.
¶ 12. Maye, who admittedly was asleep on a chair right by the front door, testified that he was wakened by the banging on the front door. Maye denied hearing the police announce “police, search warrant” or looking out the window. Maye testified that he awoke frightened and ran to the bedroom in the back of the house. Maye testified that he grabbed his gun, loaded it, and laid it on the floor by the foot of his bed. His fourteen-month-old daughter was asleep in the middle of the bed. Maye testified that he heard kicks to the back door. He testified that he fired when he heard someone entering the house. Maye testified that after he fired the shots, he heard the other officers yell, “police, police, you just shot a[n] officer.” Maye testified that he immediately he put his weapon down and slid it away.
¶ 13. After the trial of this case, Maye’s counsel identified Randy Gentry as the informant who had supplied the information for the search warrant. Gentry testified that he had purchased forty dollars’ worth of crack cocaine from Smith on December 26, 2001, and that Smith (who resided on the left side of the duplex) went to the right side of the duplex Maye’s side, got the crack cocaine, and then gave it to Gentry.
PROCEDURAL HISTORY
¶ 14. On December 26, 2001, immediately after the shooting, Maye was arrested and held without bond. Maye was charged with capital murder for the killing of a police officer. On March 24, 2003, the trial court granted Maye’s motion to change venue from Jefferson Davis County to Lamar County. On July 28, 2003, Maye moved to change venue from Lamar County back to Jefferson Davis County. The court granted the motion to change venue on September 26, 2003. However, rather than returning to Jefferson Davis County, the court changed venue to Marion County. The trial commenced on January 23, 2004, in Marion County. After four days of trial, the jury convicted Maye of capital murder and sentenced him to death. In response to Maye’s post-trial motions, the trial court set aside the sentence of death imposed by the jury and sentenced Maye to life without the possibility of parole. Maye timely appeals his conviction.
¶ 15. Finding that the trial court erred in denying Maye’s constitutional right to be tried in Jefferson Davis County, the county where the offense had occurred, this Court reverses the judgment of the trial court and remands the case for a new trial. In light of this determination, the Court will not address all of the issues raised, but we will address those which may be relevant upon a new trial.
ANALYSIS
I. Testimony of the State’s Expert in Forensic Pathology
¶ 16. At trial, Dr. Steven Hayne was offered by the State and admitted by the trial court as an expert in forensic pathology without objection from Maye. Now, Maye claims that Dr. Hayne offered impermissible expert testimony concerning the position of the shooter and the victim and the trajectory of the bullet before it *1146 struck Officer Ron Jones. In framing his argument under this issue, Maye misconstrues Dr. Hayne’s testimony.
¶ 17. It is helpful to put into context how the matter of the positions of Maye and Officer Ron Jones at the time of the shooting arose during Dr. Hayne’s testimony. On direct examination, Dr. Hayne testified regarding the cause of death and the path of the bullet through the body. When asked what was his opinion as to the cause of death of Officer Ron Jones, Dr. Hayne testified: “I described the cause of death as a gunshot wound of the abdomen consistent with distance and consistent with reentry and penetrating, sir.” Dr. Hayne was neither asked on direct nor did he offer an opinion about the position of the shooter, Maye, or of the victim.
¶ 18. Over the objection of counsel for Maye, Dr. Hayne opined regarding the position of the gun based on an assumption that the victim was standing or slightly flexed forward. It is clear that Dr. Hayne testified that he had no knowledge of the position of the shooter or the victim at the time of the shooting. However, based on that certain hypothetical, Dr. Hayne testified within his area of expertise. Dr. Hayne qualified his opinion, stating: “With the decedent in an upright position or even leaning slightly forward, I would expect the weapon to be in a relatively higher position than the entrance gunshot wound.” Dr. Hayne was responding to a hypothetical based on his knowledge of the bullet path within Officer Ron Jones’s body. This Court has held that “the use of hypothetical questioning in order to elicit expert testimony is permissible in Mississippi.” Williams v. State, 937 So.2d 35, 42 (¶ 20) (Miss.Ct.App.2006) (citing Williams v. State, 544 So.2d 782, 787 (Miss.1987)). This Court stated that:
Whether to admit expert testimony is a decision left to the sound discretion of the trial court. Marbra v. State, 904 So.2d 1169, 1176 (¶ 27) (Miss.Ct.App.2004) (citing Puckett v. State, 737 So.2d 322, 342 (¶ 57) (Miss.1999)). We will not reverse based on the trial court’s admission of expert testimony, unless we conclude that the admission was arbitrary and clearly erroneous, i.e., that the trial court abused its discretion. Id.
Id. at 41-42 (¶ 18).
¶ 19. This Court finds that this opinion testimony concerning the position of the gun was properly within Dr. Hayne’s expertise as a forensic pathologist. As a forensic pathologist, opinion evidence of the position of the gun in relation to the bullet path within the body of Officer Ron Jones was well within Dr. Hayne’s expertise. The Mississippi Supreme Court and this Court have held that it is within the expertise of a forensic pathologist to opine concerning the position of the body at the time the wounds are received. “Dr. Hayne was qualified as an expert in forensic pathology, which includes expertise in how wounds are received. This expertise necessarily relates to the position of the body at the time.” Bell v. State, 725 So.2d 836, 853 (¶ 50) (Miss.1998). In Bell, the defendant objected to the testimony of Dr. Hayne that the victim’s hand was over his face at the time of the shooting. Id. The supreme court found that this testimony was within Dr. Hayne’s area of expertise as a. forensic expert. Id. The Mississippi Supreme Court has stated:
Although there have been cases cited where experts were not permitted to testify to the position of the body, these are not consistent with the rules of evidence and the substance of the complained of testimony. Miss. R. Evid. 702 states: “if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness *1147 qualified as an expert by knowledge, skill, experience, training, or education, may testify theret'o in the form of an opinion or otherwise.” Bell stipulated as to the fact that Dr. Hayne was an expert in forensic pathology. Forensic pathology is generally accepted as a division within pathology requiring a medical degree and advanced training in forensic pathology. A forensic pathologist addresses two basic questions: what was the cause of death, and what was the manner of death?
Id. at 853-54 (¶ 51). Courts of this state routinely allow forensic pathologists to offer opinion testimony regarding the position of the victim. White v. State, 964 So.2d 1181, 1185-86 (¶ 11) (Miss.Ct.App.2007) (the Court found that a forensic pathologist’s expert opinion concerning the position of the victim’s body prior to impact with the car was admissible); Williams v. State, 964 So.2d 541, 547-48 (¶ 25) (Miss.Ct.App.2007) (testimony of Dr. Hayne concerning the position of the body of the defendant in relation to the gun was admitted as he was properly accepted as a forensic expert).
¶ 20. Furthermore, on redirect examination, counsel for Maye objected to only two questions. It appears that the testimony of which Maye complains of the most on appeal was that elicited by Maye’s counsel during re-cross-examination of Dr. Hayne when Dr. Hayne stated that Officer Ron Jones would “have to be markedly flexed over, almost on one’s knees, to achieve that trajectory.” Where a party’s questioning yields an unfavorable but responsive answer, he has no basis upon which to object to the answer. Rosenthall v. State, 844 So.2d 1156, 1160 (¶ 16) (Miss.2003) (quoting Warren v. State, 369 So.2d 483, 486 (Miss.1979)). In this case, it was Maye’s questioning that elicited the testimony of which he now complains. Therefore, he cannot object. Hoops v. State, 681 So.2d 521, 528 (Miss.1996).
¶ 21. Even assuming that the admission of Dr. Hayne’s testimony was error, we do not find it to be reversible error under the circumstances of this case. “A ruling on evidence is not error unless a substantial right of the party is affected.” Edmonds v. State, 955 So.2d 787, 792 (¶ 9) (Miss.2007) (citing Green v. State, 614 So.2d 926, 935 (Miss.1992)); see also Holland v. State, 705 So.2d 307, 344 (¶ 143) (Miss.1997) (citing Russell v. State, 607 So.2d 1107, 1114 (Miss.1992) (“Harmless error ... results if the evidence does not impinge upon a substantial right of the defendant.”)). Maye argues that this evi dence was critical because it called into question his testimony that he was on the floor in the bedroom at the time he fired the gun. However, Dr. Hayne’s testimony was not germane to the question that was before the jury and is before this Court. Dr. Hayne’s allegedly objectionable testimony offered nothing which addressed the question of whether Maye knew that police officers were attempting to gain entry into his home at the time he fired the fatal shot.
¶ 22. Maye’s argument is similar to that raised by the defendant in the case of Howard v. State, 945 So.2d 326, 370 (¶ 98) (Miss.2006), wherein the defendant argued that the expert doctor misrepresented his background and competence. In the current case, Maye argues that Dr. Hayne misrepresented his qualifications and whether his practice violated the national standards due to the number of autopsies he performs per year. In Howard, the Mississippi Supreme Court noted that the claimed misrepresentations did not go to the ultimate conclusion of the expert but to his “background and competence as an expert.” Id. at 371 (¶ 100). In Howard, as in the current case, the supreme court *1148 finds that “[e]ven if these statements were false, it is not reasonably likely that they ‘affected the judgment of the jury.’ ” Id. (quoting Barrientes v. Johnson, 221 F.3d 741, 756 (5th Cir.2000)).
¶ 23. Because we find that Dr. Hayne did not misrepresent his qualifications as an expert in forensic pathology, and because he was offered and admitted as an expert without objection from Maye at trial, there is no merit to this issue.
II. Right to be Tried in Jefferson Davis County
¶ 24. “In all criminal prosecutions the accused shall have a right to ... a speedy and public trial by an impartial jury of the county where the offense was committed.” Miss. Const, art. 3, section 26. Similar rights to be heard “by an impartial jury of the State and district wherein the crime shall have been committed ...” are secured by the Sixth and Fourteenth Amendments to the United States Constitution. Maye had a fundamental constitutional right to be tried in Jefferson Davis County, where the death of Officer Ron Jones took place. Maye is entitled to a new trial because of the trial court’s erroneous refusal to allow his exercise of his right to be tried in Jefferson Davis County, the county wherein the offense for which he was being tried was committed. This Court finds that this case should be reversed and remanded for a new trial.
¶ 25. On February 21, 2003, Maye moved for a change of venue from Jefferson Davis County, arguing that he could not receive a fair trial in Jefferson Davis County because the victim was a police officer and the son of the Prentiss Chief of Police. The motion for a change of venue was supported by the affidavits of two witnesses who attested that because there was' a bias of the public to the facts of the case and there was ill will toward Maye, Maye could not receive a fair trial in Jefferson Davis County. The State agreed to the change of venue. The trial court transferred venue to one of the forums suggested by Maye, Lamar County, noting that “there has been a substantial discussion of the alleged facts of the case in Jefferson Davis County and it would be difficult to empanel an impartial jury in Jefferson Davis County....” Trial was set in Lamar County for September 29, 2003.
¶ 26. On July 28, 2003, two months before the trial was to take place, Maye filed a second motion, entitled “Motion to Reconsider Order Granting Change of Venue.” In this motion, Maye informed the trial court that “[i]n late May, defense counsel received a telephone call from an attorney advising that a member of the Lamar County Bar warned that it was doubtful that an impartial jury could be impaneled in Lamar County to hear this capital/death penalty case.” In addition, referencing the decision of Simon v. State, 633 So.2d 407, 412 (Miss.1993), vacated and remanded by Simon v. Mississippi, 513 U.S. 956, 115 S.Ct. 413, 130 L.Ed.2d 329 (1994), Maye suggested that the court was not prohibited from selecting a venue with a racial composition similar to that of the original venue in a change of venue. In Simon, the supreme court found that the Sixth Amendment “has never been held to require that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population.” Id. (quoting Britt v. State, 520 So.2d 1377, 1379 (Miss.1988)). The State objected to the motion. On September 26, 2003, the trial court granted the motion, but it refused to return the case to Jefferson Davis County as requested by Maye. Instead, the trial court transferred the case to Marion County.
*1149 ¶ 27. This was not the last-minute “conditional” motion found in Simon v. State, 688 So.2d 791 (Miss.1997) or the motion after remand found in State v. Caldwell, 492 So.2d 575 (Miss.1986). There was no indication that Maye was using the motion to take advantage of the trial court by waiting until the eve of trial to file the motion and gain a continuance. The motion was filed in sufficient time for the court to hold a hearing and determine and address the reasonableness of Maye’s request. As noted by Maye, “the court did again change venue,” but it failed to grant Maye’s express wish to be tried in Jefferson Davis County, as required by the Mississippi Constitution. Maye specifically invoked Article 3 of the Mississippi Constitution in the motion seeking to return the case to Jefferson Davis County as he was entitled to do.
¶ 28. A defendant has the right to withdraw a prior waiver of a constitutional right in the absence of valid justification to refuse him the right. See Stevens v. Marks, 383 U.S. 234, 243-44, 86 S.Ct. 788, 15 L.Ed.2d 724 (1966); United States v. Marcello, 423 F.2d 993, 1005 (5th Cir.1970). Maye argues that the trial court failed to suggest a “proper justification” for refusing his request to have the case tried in the original venue of Jefferson Davis County; instead, the court just changed the venue to Marion County. Indeed the only justification offered by the trial court was a belief that it lacked the authority to return the case to Jefferson Davis County. The failure to offer adequate justification is a ground for reversal.
¶ 29. Once Maye requested that the trial court return venue to Jefferson Davis County, the court was under a constitutional obligation to grant his request or at the very least to offer clear justification for its decision to deny the request and change venue to another county. In this case, the trial judge offered no analysis or conclusions of law or findings of fact as to why Maye could not revoke his prior motion and seek venue in Jefferson Davis County. This was error; consequently, this Court must reverse and remand this case for a new trial.
III. Refusal of Defendant’s Requested Jury Instructions
¶ 30. The court refused jury instruction D-3, defining reasonable doubt. “Our supreme court has repeatedly stated that the term ‘reasonable doubt’ defines itself and is not a proper jury instruction.” Vaden v. State, 965 So.2d 1072, 1074 (¶ 4) (Miss.Ct.App.2007). Also refused were jury instructions D-8 and D-9 regarding self-defense. Maye requested and received two other jury instructions addressing self-defense, and the court found that these instructions sufficiently stated the law of self-defense and that the additional instructions were not necessary.[1] Howev *1150 er, of concern is the denial of jury instruction D-9, which also included the defense of Maye’s infant child as self-defense. The record does not suggest that there was a danger to the child separate and apart from that danger to Maye, which served as a basis for a self-defense instruction. Because the danger to Maye and his child were one and the same, if a self-defense instruction was appropriate, as it was, then likewise a defense of others instruction was also appropriate.
¶31. The court refused the defense’s jury instruction 15 on manslaughter. The jury was instructed on the crime of manslaughter, and the giving of this refused instruction would have been a comment by the court on the evidence.
¶ 32. Maye argues on appeal that it was error for the trial court to refuse these jury instructions offered by him. In considering the propriety of refusing certain jury instructions, “all instructions are to be read together and if the jury is fully and fairly instructed by other instructions the refusal of any similar instruction does not constitute reversal error.” Laney v. State, 486 So.2d 1242, 1246 (Miss.1986) (citing Groseclose v. State, 440 So.2d 297 (Miss.1983); Barr v. State, 359 So.2d 334 (Miss.1978)). The “trial court is not required to instruct a jury over and over on a principal of law even though some variations are used in different instructions.” Id. (citing Groseclose v. State, 440 So.2d 297). Stated differently, Mississippi courts have “repeatedly held that the trial court is not required to grant several instructions on the same point.” Fairley v. State, 467 So.2d 894, 902 (Miss.1985) (citing McWilliams v. State, 338 So.2d 804 (Miss.1976); Ragan v. State, 318 So.2d 879 (Miss.1975)).
¶ 33. In the current case, the trial court adequately instructed the jury on the State’s burden at trial, as well as Maye’s theory of self-defense. The rejected jury instructions were either improper, redundant, or unsupported by the evidence. On remand, other jury instructions may be offered, and Maye will have an opportunity to submit other jury instructions.
IV. Search Warrant
V. Motion to Suppress
¶ 34. Maye argues on appeal that: (1) the search warrant was issued without probable cause; (2) the testimony of Gentry contradicts the affidavit given in support of the search warrant and shows that Officer Ron Jones “fraudulently misstated” the elements of probable case; and (3) he was denied due process because the State has not disclosed the identity of the confidential informant.
1135. The underlying facts and circumstances attached to the search-warrant affidavit for the Mary Street duplex are the following:
I, Ronald W. Jones, P5, do hereby state under oath that I have received information from various sources that controlled substances are being stored in and sold from two apartments located on Mary St.
A C.I. personally known to me to have given true and reliable information in the past which has led to at least one arrest, went to said residence within the past twenty-four hours and saw a large quantity of [mjarijuana being stored in both apartments located on Mary St. I, Ronald W. Jones[,][a]lso state under oath that I, personally surveillanced said apartment[s] and witnessed a large *1151 amount of traffic at unusual hours traveling to and from said apartments.
Said apartments is being occupied by Jamie Smith a known drug dealer and persons unknown. I therefore believe that other controlled substances are being stored in and sold from said apartments by Jamie Smith and/or person(s) unknown.
¶ 36. The “Underlying Facts and Circumstances” support the issuing judge’s finding of probable cause. “An affidavit for a search warrant is a means of presenting to the issuing officer a basis upon which he may determine whether in fact probable cause exists.” Bevill v. State, 556 So.2d 699, 712 (Miss.1990). Probable cause is:
a practical, nontechnical concept, based upon the conventional considerations of every day life on which reasonable and prudent men, not legal technicians, act. It arises when the facts and circumstances within an officer’s knowledge, or of which he has reasonably trustworthy information, are sufficient in themselves to justify a man of average caution in the belief that a crime has been committed and that a particular individual committed it. Conerly v. State, 760 So.2d 737, 740 (Miss.2000) (quoting Strode v. State, 231 So.2d 779, 782 (Miss.1970)).
Busick v. State, 906 So.2d 846, 852 (¶ 6) (Miss.Ct.App.2005) (finding that there was no misrepresentation on the affidavit in support of a search warrant where the officer discovered after issuance of the search warrant that the suspect was not the same person as the individual videotaped). This Court has stated that:
When reviewing a judge’s finding of probable cause, this Court does not make a de novo determination but only looks to see whether there was a substantial basis for the judge’s finding. McKinney v. State, 724 So.2d 928, 931 (¶ 12) (Miss.Ct.App.1998). In order to issue a valid search warrant, the judge “is required to make a ‘practical, commonsense decision whether given all the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.’ ” Id. (quoting Smith v. State, 504 So.2d 1194, 1195 (Miss.1987)).
Huff v. State, 828 So.2d 228, 231 (¶ 6) (Miss.Ct.App.2002) (finding that an officer’s statement to the judge that there was an odor coming from the house consistent with the manufacturing of drugs and a confidential informant’s statement that the occupants purchased chemicals to manufacture drugs were sufficient probable cause for a search warrant). In the current case, the information contained in the “Underlying Facts and Circumstances” section supports the finding of probable cause for the search warrant. As stated in the “Underlying Facts and Circumstances,” Officer Ron Jones attested that “various sources” had provided information “that controlled substances were being sold” from the duplex. Further, Officer Ron Jones attested that a confidential informant, who had “given true and reliable information in the past which has led to at least one arrest” had gone to the residences and seen “a large quantity of [mjarijuana being stored in both apartments.” Additionally, Officer Ron Jones attested that he had conducted surveillance on the apartments and had seen “a large amount of traffic at unusual hours traveling to and from said apartments.” Therefore, Maye’s arguments that the search warrant was issued without probable cause and that the trial court erred in denying Maye’s motion to suppress are without merit.
VI. Prosecutorial Misconduct
¶ 37. Maye argues that the prosecutor committed prosecutorial misconduct *1152 by (1) improperly referring to Officer Ron Jones’s status as a police officer at trial, (2) stating during closing argument that the police officers could have gotten away with killing Maye at the scene in retaliation for shooting Officer Ron Jones, and (3) mischaracterizing the evidence during closing argument. The Mississippi Supreme Court has noted the wide latitude given to counsel during closing statements:
We must first observe that the [sjtate and defense counsel should be given wide latitude in their arguments to a jury. This is inherent in, and indispensable to, our adversary system. Courts should be very careful in limiting the free play of ideas, imagery and the personalities of counsel in their argument to a jury.
We next observe it is the duty of a trial counsel, if he deems opposing counsel overstepping the wide range of authorized argument, to promptly make objections and insist upon a ruling by the trial court. The trial judge first determines if the objection should be sustained or overruled. If the argument is improper, and the objection is sustained, it is the further duty of trial counsel to move for a mistrial. The circuit judge is in the best position to weigh the consequences of the objectionable argument, and unless serious and irrepai'able damage has been done, admonish the jury then and there to disregard the improper comment. See Wilson v. State, 234 So.2d 303 [, 308] (Miss.1970); Aldridge v. State, 180 Miss. 452 [, 456], 177 So. 765 (1938); Matthews v. State, 148 Miss. 696 [, 701], 114 So. 816 (1927).
Johnson v. State, 477 So.2d 196, 209-10 (Miss.1985). “Where a prosecutor has made an improper argument, the question on appeal is ‘whether the natural and probable effect of the improper argument of the prosecuting attorney is to create an unjust prejudice against the accused as to result in a decision influenced by the prejudice so created.’ ” Davis v. State, 914 So.2d 200, 207-08 (¶ 38) (Miss.Ct.App.2005) (quoting Howell v. State, 860 So.2d 704, 762 (¶ 206) (Miss.2003)).
¶ 38. Further, the Court finds that Maye’s claims of error are without merit. The Court finds that there was no impropriety in the prosecutor identifying Officer Ron Jones as a police officer. Hansen v. State, 592 So.2d 114, 146 (Miss.1991). That information was relevant to the capital offense charged, the murder of a police officer in the performance of his duties. It was not admitted as victim-characteristic evidence at the sentencing phase; but rather, it was an integral part of the proof necessary to establish the capital offense. Miss.Code Ann. § 97-3-19(2)(a) (Rev.2006).
¶ 39. We note that the comments made by the prosecutor that “[training and professionalism is being an officer ... and not letting your emotions go and shooting the person that” shot your fellow officer were in response to a challenge by the defendant that the officers lacked professionalism — and is proper argument at closing. “It is imperative that the statements be read in their appropriate context in light of that which the prosecutor was in fact arguing to the jury at the time.” Holland v. State, 705 So.2d 307, 347 (¶ 168) (Miss.1997). It is clear that the prosecutor was commenting upon the officers’ professionalism and training on the night of the shooting, and such comments were proper. However, even if the comments were deemed improper, it was harmless error. “If the argument does not result in ‘unjust prejudice against the accused as to result in a decision influenced by the prejudice so created,’ it will be deemed harmless.” McGowen v. State, *1153 859 So.2d 320, 346 (¶ 91) (Miss.2003) (citations omitted).
¶ 40. Furthermore, the Court finds that the prosecutor’s remaining statements regarding the evidence were reasonable inferences drawn from the testimony presented. It is well settled that “parties may comment upon any facts introduced into evidence, and may draw whatever deductions and inferences that seem proper from the facts.” Ross v. State, 954 So.2d 968, 1002 (1174) (Miss.2007) (citing Bell, 725 So.2d at 851). There is no merit to this issue.
VII. Cruel or Unusual Punishment
¶41. Maye’s final argument is that it was error for the trial court to sentence him to life without the possibility of parole after the trial court set aside the sentence of death imposed by the jury. In particular, Maye argues that the imposition of the sentence “without giving individualized consideration to the circumstances of this case ... violated Mr. [May’s] constitutional rights against cruel or unusual punishment.” In the current case, the trial court had but two options in Maye’s sentencing, death and life without the possibility of parole. Pham v. State, 716 So.2d 1100, 1103 (¶ 21) (Miss.1998); Flowers v. State, 842 So.2d 531, 556 (¶ 77) (Miss.2003). In the current case, upon the election of the district attorney to not pursue the death penalty, the trial court had only one choice. That choice was the lesser sentence of life without the possibility of parole, which the trial .court imposed. Miss.Code Ann. § 97-3-21 (Rev.2006); Miss.Code Ann. § 47-7-3(l)(f) (Rev.2004); see Brown v. State, 890 So.2d 901, 922 (¶ 82) (Miss.2004). The appellate courts of Mississippi have held that “sentences that do not exceed the maximum term allowed by statute will not be considered grossly disproportionate and will not be disturbed on appeal.” Johnson v. State, 950 So.2d 178, 183 (¶ 22) (Miss.2007) (citations omitted). Thus, Maye’s final claim of error is without merit.
CONCLUSION
¶ 42. Finding that the trial court abused its discretion in not allowing Maye to exercise the constitutional right to be tried in the county where the offense occurred, the judgment of the trial court is reversed, and this case remanded for a new trial.
¶ 43. THE JUDGMENT OF THE CIRCUIT COURT OF JEFFERSON DAVIS COUNTY IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JEFFERSON DAVIS COUNTY.
GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ„ CONCUR. IRVING, J., CONCURS IN PART AND IN THE RESULT. MAXWELL, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MYERS, P.J. LEE, P.J., AND CARLTON, J., NOT PARTICIPATING.

. The two instructions granted on self-defense were:
Instruction No. 5
The Court instructs the jury that if you find from the evidence in this case that on December 26, 2001 Cory J. Maye did shoot and kill Ron Jones; but that such shooting was in necessary self-defense, as defined by other instructions of the Court; then your duty under the law is to find Cory J. Maye not guilty of the murder of Ron Jones.
Instruction No. 6
The Court instructs the jury that to make a killing justifiable on the grounds of self-defense, the danger to the defendant must be actual, present and urgent, or. the defendant must have reasonable grounds to believe that the victim intended to kill the defendant or to do him some great bodily harm, and in addition to this, he must have reasonable grounds to believe that there is imminent danger of such act being accomplished. It is for the jury to determine the reasonableness of the grounds upon which *1150 the defendant acts. If you, the jury unanimously find that the defendant acted in self-defense then it is your sworn duty to return a verdict in favor of the defendant.